ILLINOIS VALLEY ASPHALT, INC., and
V. H. Callender Construction Co.,
Movants,

v.

HARRY BERRY, INC., Harry Berry,
Individually, and Paul Berry,
Individually, Respondents.

Supreme Court of Kentucky.

Jan. 16, 1979.

Rehearing Denied April 10, 1979.

J. D. Kemp, John M. Dixon, Jr., Turner, Dixon, Kemp & Fletcher, Hopkinsville, for movants.

W. Douglas Myers, Richard A. Dennis, Milburn C. Keith, Keith & Myers, Hopkinsville, William E. Scent, Tarrant, Combs & Bullitt, Louisville, for respondents.

REED, Justice.

This is a dispute concerning the allowance and computation of damages resulting from a breach of contract to produce and purchase stone. In substance, the circuit court held that the movant, Illinois Valley Asphalt, Inc., had breached the agreement and was responsible to the respondent, Harry Berry, Inc., for the market value of a quantity of stone used by Illinois Valley without payment, and was also responsible to Berry for lost profits in the amount of twenty-five cents a ton for stone which Berry was prevented from selling because of Illinois Valley's breach.

When Illinois Valley and Callender, the other party to the agreement against whom the circuit court adjudged liability to Berry for a relatively insubstantial sum, appealed to the Court of Appeals, that court affirmed in an unpublished opinion stating that "substantial evidence exists in the record to support the judgment of the lower

court." The opinion did not describe or otherwise allude to the "substantial evidence" to which it had reference. We confine our decision to the errors asserted by the movants in their motion for discretionary review [1] which we have granted. We reverse the Court of Appeals and the circuit court for the reasons later stated.

## I

Despite the voluminous record, the operative facts necessary to a disposition of this appeal are simple. Illinois Valley decided to bid to furnish asphalt for the construction of a new airport runway at Fort Campbell, Kentucky. Berry operated a quarry located near Hopkinsville, Kentucky, where he produced limestone rock. Illinois Valley and Berry concluded that additional equipment and manpower were needed in the rock production project. They brought Callender into the deal. Callender had a large quarrying operation in Illinois and had access to sufficient equipment and manpower to help Berry produce the needed rock, which the parties estimated to amount to between 135,000 and 180,000 tons of rock. Illinois Valley, Callender and Berry entered into a poorly drawn written agreement. The substance of the understanding seemed to be this: Callender and Berry would produce limestone rock to be purchased and used by Illinois Valley in the Fort Campbell project. Callender agreed to pay Berry ten cents per ton royalty on all stone produced by Callender. Illinois Valley agreed to pay "Berry and/or Callender" $1.35 per ton for rock produced by each company. Illinois Valley was given the right to use certain equipment and facilities at the Berry quarry site and agreed to use Berry's scales to weigh the rock for computation of payment purposes. Callender moved his equipment onto the Berry Quarry. A dispute soon developed. Illinois Valley bought rock elsewhere.

Illinois Valley and Callender sued Berry. Illinois Valley's claim was that Berry failed to produce, necessitating purchase of rock elsewhere for a higher price. Callender alleged that Berry harassed him in his operations on the Berry quarry thus making his performance more difficult and expensive.

On conflicting evidence, the trial judge pinned the blame on Illinois Valley. It was the judge's finding that Illinois Valley failed to purchase 47,000 tons of stone from Berry in violation of "the intent and understanding on behalf of each of the contracting parties," and that Berry had lived up to all obligations imposed upon him by the agreement. The judge awarded Berry twenty-five cents a ton for lost profits on 47,000 tons of stone, amounting to $11,750, as part of his judgment against Illinois Valley.

## II

Paul Berry's testimony was the only evidence on which the award of lost profits could have been based. He testified in pertinent part:

"Q–75 What kind of profit would Harry Berry, Inc. have made on the prices set forth in the agreement on a per-ton basis if it had received a substantial part of the rock business of Illinois Valley Asphalt?

A. If we had been able to maybe sell them forty-five thousand or fifty thousand tons we might have made—might have made maybe twenty-five cents a ton off of that.

Q–76 Twenty-five cents a ton?

A. Approximately that if we were lucky."

■ Loss of anticipated profits as an element of recoverable damages for breach of contract is fully recognized in Kentucky. *Graves v. Winer*, Ky., 351 S.W.2d 193 (1961). Mere uncertainty as to the amount will not preclude recovery. *Roadway Express, Inc. v. Don Stohlman & Assoc., Inc.*, Ky., 436

---

[1] The movant, Illinois Valley, concentrates on the damage issue and only weakly questions the imposition of liability for breach of contract. Neither movants nor respondents discuss or mention possible applicability of the U.C.C. to the damages issue. Cf. KRS 355.2–107.

S.W.2d 63 (1968). There must be presented, however, sufficient evidence on which a reasonable inference as to the amount of damage can be based. McCormick, Handbook on the Law of Damages, Sec. 28, 104–06 (1935). In proving a claim of loss of profits of an established business, the record of past profits is usually the best available evidence. Mere "estimates" of witnesses will not serve, if books were kept. McCormick states: "Opinions of witnesses as to the amount of profits that would have been gained are not admissible, except where the opinion is that of an expert *based upon relevant facts.*" *Id.,* at 107–10 (emphasis supplied).

Professor Dobbs makes the following interesting observations:

"Courts have been increasingly willing to award special damages in many kinds of cases. That is to say, courts have long since ceased to protect only capital value. With the increase in willingness to award other kinds of special damage, courts have also shown an increased willingness to award lost profits, *subject always to the requirement that some rational basis for computation be furnished.*"

Dobbs, Handbook on the Law of Remedies, Ch. 3, Sec. 3.3, 154 (1973). (emphasis supplied).

■ We hold that the "guess estimate" of Paul Berry based on what might have happened "if we had been lucky" falls far short of the quality of evidence required to permit an inference of the approximate amount of damage or to furnish a rational basis for computation of the loss. The circuit court erred in its award of lost profits to Berry on its counterclaim against Illinois Valley.

### III

■ We are convinced the trial court erred in assessing Berry a recovery of $1.35 a ton from Illinois Valley on rock produced by Callender. The trial court found that Callender produced 18,103 tons of rock on the Berry premises that were not accounted for in its sale of rock to Illinois Valley. The trial court held that this rock had been "converted" by Illinois Valley and that the contract rate of $1.35 per ton represented the "fair and reasonable value" of the material at the time of conversion.

In our view, the question of "conversion" was not involved. All three parties treated the contract as valid in the legal positions they assumed before the trial court. They have to take the bitter with the sweet. See *Olive Hill Limestone Co. v. Gay-Coleman Const. Co.,* 244 Ky. 822, 51 S.W.2d 465, 466 (1932). Illinois Valley owed *Berry* $1.35 a ton on rock *produced by Berry.* Illinois Valley owed *Callender* $1.35 a ton on rock *produced by Callender.* Callender owed Berry ten cents a ton on all rock *produced by Callender.*

The award of the trial court transferred Callender's responsibility to Illinois Valley. It allowed Berry to recover the contract rate for stone produced by Callender. Berry was entitled to the royalty rate of ten cents per ton on stone produced by Callender with credit to Callender for stone produced by Callender but used by Berry. The award to Berry of $1.35 a ton on stone produced by Callender cannot stand.

The decision of the Court of Appeals is reversed, the judgment of the circuit court is reversed and the cause is remanded to the circuit court with directions to enter a new judgment recomputing the damages awarded in accordance with this opinion.

All concur except CLAYTON and STERNBERG, JJ., who dissent.

AKER, J., did not participate in the decision of this case.