**David MEYER, Roland Schuldt, and Jack Jahntz, Partners, d/b/a J.D. Sales Company, Plaintiffs,**

v.

**KERO–SUN, INC., a Delaware corporation, Defendant.**

**No. 83–C–131–S.**

United States District Court, W.D. Wisconsin.

Aug. 11, 1983.

Brian E. Butler and Thomas M. Pyper of Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., for plaintiffs.

David J. Harth of Foley & Lardner, Madison, Wis., for defendant.

MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiffs have brought this suit pursuant to the Wisconsin Fair Dealership Law,

Chapter 135, Wis.Stats. Before the Court are motions to dismiss for mootness by defendant and for summary judgment by the plaintiffs. Although the procedural posture of this case is complex, the essential issue for the Court at this time is whether Kero-Sun has terminated the dealership with the plaintiffs.

The facts, for purposes of this decision, are undisputed.

## FACTS

Plaintiffs David Meyer, Roland Schuldt and Jack Jahntz are partners, doing business as J.D. Sales Company, a wholesaler of hardware items and kerosene heaters, among other things. The plaintiffs (hereinafter "J.D. Sales," in the singular) are all residents of Wisconsin.

Defendant Kero-Sun ("KS") is a Connecticut corporation which imports kerosene heaters from Japan and sells them through a network of wholesale distributors.

The matter in controversy exceeds $10,000.

In 1979, the parties entered into a contract whereby J.D. Sales would become a wholesale distributor of KS products. The parties agree that the contract granted a "dealership" to J.D. Sales within the meaning of the Wisconsin Fair Dealership Law. J.D. Sales' distributorship was to be exclusive in an area comprising the greater part of Wisconsin and the upper peninsula of Michigan. On April 1, 1982, the agreement was renewed in writing, and contained the following term:

> While the distributor is in compliance with the terms and conditions of this Agreement, Kero-Sun shall not appoint any other distributor for the Products in the Area of Responsibility or with the Area of Responsibility herein as part of its area of responsibility.

On January 19, 1983, J.D. Sales was notified, by letter signed by the president of KS, that KS was planning to alter the distributorship agreements upon the expiration of the contract on April 1, 1983. The alteration concerned the intent of KS to sell directly to chain store retailers on a national or regional basis. The letter made clear that the change was due to economic forces. The change was to be nationwide in scope and a particular distributor's performance was not an issue.

After J.D. Sales made some inquiries concerning the changes in the distribution system with particular reference to the Wisconsin Fair Dealership Law ("WFDL"), KS, by letter from its general counsel, informed J.D. Sales that the change would take place, as to J.D. Sales, only after 90 days from the receipt of this second letter.

J.D. Sales filed the complaint in this action on February 8, 1983, claiming that it was a dealer within the meaning of the WFDL, alleging that the proposed change in the distributorship agreement, which would undercut the exclusive nature of J.D. Sales' territory, was a "substantial change in competitive circumstances," and was forbidden by the WFDL, specifically, by § 135.03 and § 135.04, Wis.Stats. Under the WFDL, such changes could only be accomplished with "good cause," defined in § 135.02(6) as, generally, failure or bad faith on the part of the dealer. The complaint prayed for preliminary and permanent injunctive relief, damages and attorney fees.

A hearing on the motion for a preliminary injunction was held before the Court on February 14, 1983. A preliminary injunction was granted by order filed February 25, 1983, the Court holding that the criteria necessary for the issuance of an injunction had been satisfied by J.D. Sales. The only issue which was seriously in dispute at the time of the hearing was whether J.D. Sales was likely to succeed on the merits.

It being assumed that the distributorship agreement granted a dealership to J.D. Sales, the factual dispute concerned whether the change in the exclusivity of the distributorship arrangement constituted a "substantial" change in competitive circumstances within the meaning of the statute, and whether KS had "good cause" for making the change. The Court determined that

the change was substantial and, with more difficulty, decided that economic need for KS to adopt a new marketing strategy did not constitute good cause. On this basis the injunction was issued, the primary terms of which were as follows:

> ... [D]efendant is enjoined, during the pendency of this action, from substantially changing the competitive circumstances of the distributorship agreements now in force between the plaintiff and defendant through the sale or other distribution of the products covered by the distribution agreements in the territory assigned to plaintiff by such agreements
> . . .

On February 25, 1983, the same day as the preliminary injunction was filed, the president of KS, Mr. William Litwin, wrote a letter to J.D. Sales, a letter which was sent to all of KS' distributors. The letter spelled out in greater detail the changes being contemplated in the new distributorship agreement. The letter informed J.D. Sales that a new contract for the two year period beginning on April 1, 1983, would be ready for signatures at a distributorship meeting on March 9, 1983, in Scottsdale, Arizona.

One of the partners in J.D. Sales attended the meeting in Scottsdale, at which time J.D. Sales refused to sign the new distributorship agreement. The new agreement contained various changes from the old agreement, significantly, forbidding KS to appoint "general wholesale" distributors in J.D. Sales' territory rather than forbidding the appointment of any distributors.

On March 31, 1983, the distributorship agreements between KS and J.D. Sales expired. However, the expired agreement contained a provision for automatic renewal and also contained the following provision:

> b) NOTICE OF NON–RENEWAL— Kero-Sun may elect not to renew this Agreement at the end of each term and shall notify Distributor in writing of its intention not to renew at least thirty (30) days prior to the expiration date.

On April 18, 1983, J.D. Sales filed an amended complaint, alleging that KS terminated or failed to renew the distributorship agreements. The new complaint also claims that co-op advertising credits are owing to J.D. Sales from KS.

On May 24, 1983, KS offered another distributorship agreement to J.D. Sales. This contract purports to return to J.D. Sales the exclusive nature of its distributorship. The offer has not been accepted.

## MEMORANDUM

### I. *Summary Judgment*

It is the contention of J.D. Sales that the actions of KS, both before and after the issuance of the preliminary injunction in this case, constitute notice of nonrenewal of the agreements between the parties which were scheduled to expire on April 1, 1983. Therefore, J.D. Sales argues, the relationship between the parties terminated on that date.

The Court does not agree. Plaintiff's position is utterly without merit and constitutes bootstrapping of the most odious sort.

The WFDL is a legislative scheme designed to protect the inherently weaker grantee of a dealership from the power of the stronger grantor. *Designs in Medicine, Inc. v. Xomed, Inc.,* 522 F.Supp. 1054 (E.D. Wis.1981). It is fair to say that the legislature viewed dealership arrangements as contracts of adhesion, the grantee being in no position to resist the terms that the grantor might wish to impose, and attempted to equalize the bargaining position of the grantee.

The WFDL forbids cancellation, termination or nonrenewal of a dealership by the grantor except for good cause, a term that is defined, generally, as failure or bad faith on the part of the grantee. Nor can the grantor substantially change the competitive circumstances of the dealer. The law provides that a grantor who violates the WFDL in any of these respects is liable for damages, costs and attorney fees. And the grantee is given liberal access to injunctive relief. Strict notice requirements are provided and contractual terms which are con-

trary to the WFDL are void. Finally, for termination, a dealer has recourse to a liberal repurchase of inventory provision in addition to the other remedies.

■ J.D. Sales brought this suit seeking damages and injunctive relief in order to remedy what it viewed as a substantial change in competitive circumstances which, according to the express intentions of KS, was to take place when the old contracts expired and new contracts were offered on April 1, 1983. This Court issued a preliminary injunction forbidding the grantor from carrying out this action. J.D. Sales now wishes to treat the actions of KS, including the pre-injunction letter and KS' further statements concerning the new contracts in addition to the offer of a new contract which would have undermined the exclusivity of the prior agreements, as a termination. According to J.D. Sales, KS' actions amount to a termination apparently because KS did not accede to a continuation of the relationship on precisely the same terms as the contracts which were scheduled to expire on April 1, 1983. In other words, the offer of a new contract with different terms amounts to a termination.

Although interesting and novel, the theory is nonsense. The Court noted, when it issued its preliminary injunction, that the law forbids both substantial change in competitive circumstances *and* nonrenewal, and that a grantor could hardly expect to be allowed to change competitive circumstances at the time for renewal. Since the intent of the law is to equalize the bargaining power of the parties, neither can the law be read to allow a dealer to treat a change in competitive circumstances as a termination or nonrenewal.

■ The Court must hold that the terms "substantial change in competitive circumstances" and "nonrenewal" or "termination" to be mutually exclusive. It is axiomatic that statutes should be construed to give words their ordinary meaning and to carry out the purposes for which they were enacted. In the context of the WFDL, "termination," "cancellation" and "nonrenewal" clearly mean the act of the grantor which ends the relationship between the parties. (Hereinafter, these terms will be collectively referred to as "termination.") As J.D. Sales concedes, nothing done by KS explicitly shows an intent to end the relationship. Rather, KS attempted to make a significant change in the relationship when the old contracts expired.

The Court's view of the term termination is based upon the context. The Uniform Commercial Code, § 2–106 (Wis.Stats., § 402.106(3)) states:

> "Termination" occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach.

While this language might lend some support to the position of the plaintiff here, the definition is not expressly applicable to the WFDL. The UCC definition talks in terms of ending the contract, not the relationship.

■ The WFDL, on the other hand, is a statutory scheme of regulation of a very specific type of relationship. While the published cases are almost silent on the precise question here, logic dictates that the remedies for termination should be available only for unequivocal terminations of the entire relationship. In *St. Joseph Equipment Co. v. Massey-Ferguson, Inc.*, 546 F.Supp. 1245 (W.D.Wis.1982), the Court suggested, but did not hold, that the defendant's withdrawal from a product market could be interpreted as either a termination or a substantial change in competitive circumstances. That defendant did not expressly terminate the agreement but merely notified the dealer of the decision. This Court believes that such an act would constitute an unequivocal termination. The only exception would be if the product line discontinued was an insignificant factor in the dealer's business, in which case there could probably be no legitimate claim that the change in competitive circumstances was substantial. Thus, to the extent *St. Joseph* suggests that the same act can be either a termination or change in competitive circumstances, this Court respectfully disagrees.

The WFDL is to be liberally construed to effectuate its purposes, Wis.Stats., § 135.-025, the major purpose being the continuation of dealerships on a "fair basis." The acts of KS in this case evidence an attempt to change the relationship in a substantial way, not to terminate it entirely. It would be manifestly unfair to allow a dealer to invoke the termination remedies for even substantial changes when the dealer has at its disposal provisions to stop the changes. An adoption of the position of J.D. Sales in this case would allow a dealer who is facing changes of an even insubstantial nature at the time of renewal to treat the offer of a new contract as a termination of the old one. And, in a contract which was nonrenewable, the offer of an identical contract by the grantor could give rise to an action for termination by a dealer who wished to end the relationship but wanted to gain the advantage of the termination remedies.

The existence of the remedies for substantial change in competitive circumstances makes this Court's decision comport with the underlying logic of the WFDL. Without it, the economically stronger grantor could impose substantial changes on the dealer at the time of renewal, effectively terminating the relationship. However, the law provides that the dealer can enjoin such changes and insure the continuation of the dealership relationship on a fair, essentially unchanged, basis for as long as he wishes. To allow more, as J.D. Sales tries to claim here, would give the dealer precisely the kind of power the legislature decided was improper in the hands of the grantor. That power is the power to dictate terms at the time of renewal, forcing the grantor to accept the status quo (perhaps even to accept other demands) or to face a termination action.

And, far from lending support to J.D. Sales' position here, the existence of a preliminary injunction makes it perfectly clear that the action for enjoining substantial changes in competitive circumstances was the beginning and end of the remedies due to J.D. Sales under the law. That action would make the plaintiff whole. The brief of the plaintiff suggests that the injunction only enjoined KS from changing the competitive circumstance until the contracts expired. Such a reading of the injunction makes the injunction, which is essentially worded as plaintiff requested, a nullity. As was evident from the Court's decision, the contracts themselves forbade an undermining of the exclusivity of J.D. Sales' territory during the contract period. The injunction was sought, and was granted, to enjoin a future act which was not even scheduled to occur until after the expiration of the agreements on April 1. This view is consistent with that taken by J.D. Sales when it filed its preliminary pre-trial report on March 28, 1983. Its change of position since then is suspect.

Accordingly, plaintiff's motion for summary judgment on its amended complaint alleging termination of the dealership will be denied.

## II. *Mootness*

The Court is convinced that KS' offer of a contract on May 24, 1983, which would guarantee a continuation of exclusivity in J.D. Sales' territory, resolves the controversy as it concerns injunctive relief. J.D. Sales does not dispute that the terms of the new contract provide for an exclusive distributorship in its area of responsibility. The new contract would provide for restoration of the kind of competitive circumstances that J.D. Sales sought when it brought this action.

Thus, it appears that the request for injunctive relief is moot. J.D. Sales' objection to the motion does not address the substantive aspects of the new contract regarding the exclusive nature of J.D. Sales' right to sell in its territory. Rather, J.D. Sales argues that KS has not met the burden imposed by *County of Los Angeles v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) which held that a case is moot only:

(1) [Where] it can be said with assurance that "there is no reasonable expectation ... that the alleged violation will recur," ... and

(2) interim relief or events have completely or irrevocably eradicated the effects of the alleged violation.

*Id.* at 631, 99 S.Ct. at 1383. With regard to the first requirement, KS is contractually obligating itself to conform to the injunctive relief to which J.D. Sales would have been entitled. The expectation that another violation could occur is entirely speculative. What has occurred is that KS has acquiesced in J.D. Sales' view of the contract and the WFDL, making a trial on the merits for purposes of injunctive relief superfluous.

However, it is not so clear that the offer of a new contract has eradicated the effects of the violation. Although KS attempts to argue that J.D. Sales has suffered no damages because the change in policy was never carried out, that is not clear from the complaint or the amended complaint. J.D. Sales alleges that sales were lost by virtue of KS' preparations to carry out its plans. Although J.D. Sales has made no attempt to prove its damages in this respect, it cannot be said on the basis of the record that there are none. The only damages discussed at this point concern J.D. Sales' claim for unrefunded advertising credits, which the Court understands to be a claim related to termination and which has been disposed of above.

Thus, dismissal for mootness cannot be granted. The trial previously scheduled in this matter will provide the opportunity to dispose of this issue.

Plaintiff also claims the right to attorney fees which are provided under the WFDL. The Court ordinarily treats attorney fees as an item of costs when they are allowed and the request will be handled accordingly when this matter is disposed of. Suffice to say that attorney fees attributable to J.D. Sales' attempt to manufacture a termination claim will not be allowed.

A question remains concerning the still outstanding preliminary injunction. The parties have not addressed this issue, apparently because each believed the matter would be disposed of on different grounds. It would be unfair to defendant to continue the injunction for the approximately seven weeks remaining before trial in light of the Court's holding that the request for injunctive relief is moot. On the other hand, plaintiff must have some opportunity to choose whether it wishes to accept the new contract or reject it and terminate the dealership of its own accord. Accordingly, the Court will order that the preliminary injunction issued in this case will expire on September 1, 1983.

### ORDER

IT IS ORDERED that plaintiff's motion for interlocutory summary judgment is DENIED.

IT IS FURTHER ORDERED that defendant's motion to dismiss the complaint for mootness is GRANTED with respect to plaintiff's request for injunctive relief and is otherwise DENIED.

IT IS FURTHER ORDERED that the preliminary injunction in this matter which was issued on February 24, 1983 shall expire on September 1, 1983.