**KUSEL EQUIPMENT CO., Plaintiff,**

v.

**ECLIPSE PACKAGING EQUIPMENT LTD., Defendant.**

**Civ. A. No. 85–C–1069.**

United States District Court,
E.D. Wisconsin.

Nov. 6, 1986.

F. Thomas Olson, Charne, Glassner, Gehan, Clancy & Taitelman, Milwaukee, Wis., for plaintiff.

Robert L. Titley, Quarles & Brady, Milwaukee, Wis., for defendant.

DECISION and ORDER

TERENCE T. EVANS, District Judge.

This is an action brought under the Wisconsin Fair Dealership Law, Chapter 135, Wis.Stats. Defendant Eclipse Packaging Equipment, Ltd. has moved for summary judgment, seeking dismissal of the complaint on the basis that Kusel was not a dealer within the meaning of the dealership law. It is Eclipse's contention that Kusel and Eclipse did not share the requisite "community of interest" as required under the statute and interpreted by the Wisconsin Supreme Court.

For purposes of this motion, there is no dispute as to the material facts. Eclipse is a British corporation involved in the manufacture and sale of packaging equipment for food processors. Kusel manufactures food processing equipment at its facility in Watertown, Wisconsin. In 1982, Eclipse and Kusel entered into an agreement under which Eclipse granted Kusel the right to sell and distribute its products on an exclusive basis throughout North America. The grant included the right to use Eclipse's trademark names, trademarks, service marks, advertising, and other commercial symbols. During the last five years, Kusel has also sold products on behalf of 75–100 other companies.

The percent of Kusel's gross sales which are attributable to Eclipse's products are as follows. In fiscal year 1983, none of the products were sold. In fiscal 1984, .065% of Kusel's gross sales were of Eclipse's products. In fiscal 1985, 4.974%; in fiscal 1986, .505%. Taking the four years together, Kusel's gross sales were $8.71 million. The price of Eclipse's products sold was $125,040, or 1.436% of the gross sales. And even these figures are bloated because one item, sold in fiscal 1985, accounted for all but $11,140 of the sales.

Following Eclipse's termination of Kusel as its exclusive dealer, this action was filed, alleging a violation of the Wisconsin Fair Dealership Act. The basis of the motion is that because Kusel is a multi-product retailer selling the products of many other manufacturers in addition to Eclipse, it is not a dealer within the meaning of that term in the Wisconsin Fair Dealership Law. Specifically, the defendant contends that Kusel and Eclipse do not share a "community of interest."

The Wisconsin Fair Dealership Law provides expansive protection for dealers. The purpose of the law is to protect dealers from the ordinarily vastly superior economic power of grantors of dealerships. *Rossow Oil v. Heiman*, 72 Wis.2d 696 (1976); *Meyer v. Kero-Sun, Inc.*, 570 F.Supp. 402 (W.D.Wis.1983). Perhaps because of the expansive protection available under the law, it has been extensively used, both in situations in which no one disputes that a dealership exists and in situations in which it is hard to contend that there is. *See Quirk v. Atlanta Stove Works, Inc.*, 537 F.Supp. 907 (E.D.Wis.1982); *O'Leary v. Sterling Extruder Corp.*, 533 F.Supp. 1205 (E.D.Wis.1982). And, between the extremes are seemingly endless variations of "dealerships". Although many of us may think a dealership is something that we know when we see it, not all courts see the same thing. The Wisconsin Supreme Court has read the definition of dealership much more restrictively than has the Court of Appeals for the Seventh Circuit. It also seems that no matter how many cases are reported in which dealership is defined, there is always room for argument.

Under the statute, for a dealership to exist there must be a contract or agreement by which a person is granted the right to sell or distribute goods or services or the right to use a trade name or other logo and in which there is a "community of interest" between the grantor and the dealer. Section 135.02(2), Wis.Stats.; *Kania v. Airborne Freight Corp.*, 99 Wis.2d 746 (1981). "Community of interest" is defined in the statute as "a continuing financial interest between the grantor and grantee in either the operation of the dealership business or the marketing of such goods and services." Section 135.02(4), Wis.Stat.

When the facts concerning a contract are not in dispute, the question whether a contract creates a dealership is one of law, not fact. *Kania, supra*. Once a business relationship is found to be a dealership, the law is liberally construed to effectuate its purpose in protecting dealers. However, the definition of dealership is not to be construed expansively. *Kania, supra; Moore v. Tandy Corp.*, 631 F.Supp. 1037 (W.D. Wis.1986).

In this case, the question involving the community of interest is specifically whether a dealer who handles products for from 75–100 companies, or put otherwise, a dealer 2% of whose sales are due to the products of a grantor, can have a "community of interest" with that grantor.

The Court of Appeals for the Seventh Circuit has found the requisite community of interest in a case in which the grantor's products were about 4% of the dealer's sales. *Reinders Bros., Inc. v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44 (7th Cir. 1980). However, later, the Wisconsin Supreme Court referred *in dicta* in *Foerster, Inc. v. Atlas Metal Parts Co.*, 105 Wis.2d 17, 27 (1981), to the fact that the harm in that case was not the "type of 'economic hardship' which arises where 50% to 60% of the business' time is dedicated to the sale of one company's line of products." As plaintiff correctly points out, *Foerster* involved a manufacturer's representative, rather than a dealer per se; however, I am not convinced that the court would confine its remarks only to manufacturer's representatives.

The issue is one of Wisconsin law. I am convinced that whatever boundaries the Wisconsin Supreme Court would place on dealerships, a dealer who sells products of from 75–100 manufacturers cannot use the Wisconsin Fair Dealership Law to sue a grantor whose products account for less than 2% of sales. First of all, such a situation does not come within the purpose of the law. The law was an attempt to equalize the economic positions of grantors

and dealers and to protect dealers from the devastation which would result from being terminated by a grantor whose products were a significant part of the dealer's business. Two percent is not a significant part of a business. The loss of 1.436% in this case would not be devastating to Kusel. In fact, the loss almost borders on the insignificant.

More importantly, the requirement for a "community of interest" must be interpreted so that it means something. If it is interpreted to mean that anytime a dealer sells any products of a manufacturer there is a community of interest, the requirement would be effectively read out of the statute. For the phrase to mean something, "community of interest" must indicate some significant economic relationship between the parties. Exactly what level that relationship must reach is not a question that must be determined in this case. Kusel's involvement with Eclipse clearly falls short of being a community of interest.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment is GRANTED and this action is DISMISSED.