0966

COLLINS MUSIC COMPANY, INC., Appellant v. Henry INGRAM and Charles Cipolla, Respondents.

(357 S. E. (2d) 484)

Court of Appeals

*W. Brantley Harvey, Jr.,* of *Harvey & Battey, P.A.,* Beaufort, *for appellant.*

*James H. Moss* and *H. Fred Kuhn, Jr.,* both of *Moss, Bailey, Dore & Kuhn,* Beaufort, *D. Thomas Johnson,* Har-

deeville, and *James B. Richardson, Jr.*, Columbia, *for respondents.*

Heard April 22, 1987.

Decided May 26, 1987.

BELL, Judge:

Collins Music Company, Inc., instituted this action to recover damages from Henry Ingram and Charles Cipolla for tortious interference with Collins's contractual relationships with customers and to enjoin them from future interference. The trial judge held Ingram and Cipolla had wilfully interfered with a contract between Collins and one of its customers, but concluded Collins had failed to prove the nature and extent of its damages. The judge further held the question of injunctive relief was moot. Collins appeals. We affirm the circuit court's finding on damages, but vacate the portion of the order relating to injunctive relief and remand.

Collins Music Company is in the business of leasing coin operated amusement machines. In October 1981, Collins entered into an agreement with Tossie E. Griner, d/b/a/ Smith's Grocery, under which Collins acquired "the exclusive right for FIVE years to install and maintain coin operated music, pool and amusement machines" at Smith's Grocery. Revenues from the machines were to be equally divided between Collins and Griner. About ten days later, Collins installed two machines at Smith's Grocery.

Henry Ingram and Charles Cipolla were partners in AAA Amusement, Inc., which also leases amusement machines. In April 1982, Ingram installed some of AAA's machines in Smith's Grocery.

Griner closed Smith's Grocery in late August 1982 and opened Lois' Game Room in the same building. Both Collins's and AAA's machines were then moved into Lois'. On September 4, Collins and Griner executed a second agreement granting Collins the exclusive right to install amusement machines in Lois'. A short time later, Ingram purchased Lois' from Griner. After discovering the change in ownership, Collins removed its machines sometime in November. By the time of trial, Lois' Game Room had closed down.

Collins commenced this action against Ingram in May 1982 and later amended its complaint to name both Ingram and Cipolla as parties defendant. Collins alleged the defendants had intentionally interfered, and were threatening to continue to interfere, with exclusive contracts between Collins and its customers. The complaint specifically alleged interference with Collins's contracts with Griner and another customer. Collins's prayer requested (1) actual and punitive damages of seventy-five thousand dollars and (2) permanent injunctive relief prohibiting Ingram and Cipolla from interfering with its business and customers and from inducing its customers to breach their contracts with Collins.

At the conclusion of the bench trial, the circuit judge held Ingram and Cipolla had wilfully interfered with Collins's contract with Griner. The judge further held, however, that Collins had failed to prove the nature or extent of any damages and that the request for injunctive relief was moot because Smith's Grocery was no longer in business.

Collins contends there was sufficient evidence at trial to prove its damages and that the issue of injunctive relief is not moot.

## I.

The trial judge was correct in concluding that the question of injunctive relief was moot concerning any contract between Collins and Griner. Both Smith's Grocery and Lois' Game Room have closed, and Griner now has no contractual relationship with Collins with which the defendants could interfere. Collins's complaint, however, prays "[t]hat the Defendants be restrained and enjoined from persuading or inducing Plaintiff's customers to breach or cancel their contracts made with the Plaintiff." Thus, the relief sought by Collins was not confined to an injunction against interference with Griner's contracts. At trial, two of Collins's former employees testified that after leaving Collins they assisted Ingram and Cipolla in attempts to interfere with contracts between Collins and other customers. In addition, Collins introduced into evidence one exclusive contract it had executed with another customer.

Since the pleadings and the evidence raise the issue of

injunctive relief affecting contracts with parties other than Griner, we vacate that part of the order characterizing injunctive relief as moot and remand to the trial court to determine whether an injunction should issue.

## II.

To establish an action for intentional interference with a contract, a plaintiff must establish not only that the defendant wilfully procured breach of an existing contract, but also that damages resulted from the breach. *See Todd v. South Carolina Farm Bureau Mutual Insurance Co.*, 287 S. C. 190, 336 S. E. (2d) 472 (1985). Collins sought at trial to recover profits lost as a result of the defendants' interference with the contracts between Collins and Griner. Proof of lost profits requires the plaintiff to prove (1) that it is reasonably certain that profits would have been realized but for the tort and (2) that such lost profits can be ascertained and measured from the evidence produced with reasonable certainty. *Petty v. Weyerhaeuser Co.*, 288 S. C. 349, 342 S. E. (2d) 611 (Ct. App. 1986). Collins has failed to meet this burden.

The record contains no clear evidence that the presence of AAA's game machines deprived Collins of any profits it would otherwise have made. In fact, Collins's weekly receipts show revenues from its machines in Smith's Grocery increased dramatically after April 1982 when the defendants installed their machines. Those higher revenues continued up until the time Smith's Grocery closed.

To support the existence of damages, Collins points to testimony that Ingram appropriated money from Collins's machines. It is true the evidence might support a recovery for conversion. Collins, however, pleaded and pursued a cause of action for intentional interference with the contract, not conversion. A plaintiff cannot seek relief on appeal under a theory different from that relied on below. *Bowling v. Palmetto State Life Insurance Co.*, 231 S. C. 613, 99 S. E. (2d) 407 (1957).

Assuming Collins proved the fact of damage resulting from AAA's interference with its contract, the record contains no evidence showing the amount of damages

with reasonable certainty. Although the law does not require absolute certainty of proof upon which lost profits are to be estimated, it does require such reasonable certainty that damages may not be based wholly upon speculation and conjecture. *South Carolina Finance Corp. of Anderson v. West Side Finance Co.*, 236 S. C. 109, 113 S. E. (2d) 329 (1960); *Petty v. Weyerhaeuser Co., supra.* The only estimate Collins has offered is $9,281.50, the total amount of money it collected from machines on Griner's premises after April 1982. We are unable to ascertain any relationship between the amount of Collins's gross receipts and the amount of profits Collins failed to receive as a result of the defendants' actions. The figure suggested by Collins is purely speculative and cannot serve as a basis for estimating damages. *See Adams v. Hardin Motor Co.*, 111 S. C. 493, 98 S. E. 381 (1919).

Since Collins failed to prove the fact and amount of damages, we hold the trial judge acted properly in denying any recovery.

Affirmed in part; vacated in part and remanded.

CURETON and GOOLSBY, JJ., concur.