Harold LINDEVIG, d/b/a Lindevig Supply, a/k/a Lindevig Sales & Service, and David Lindevig, Plaintiffs-Respondents,

v.

DAIRY EQUIPMENT COMPANY, a division of DEC International, Inc., Defendant-Appellant.

Court of Appeals

*No. 88-0181. Argued February 6, 1989.—Decided May 4, 1989.*

(Also reported in 442 N.W.2d 504.)

For the defendant-appellant there were briefs by *Jack D. Walker* and *John R. Sweeney*, of *Melli, Walker, Pease & Ruhle, S.C.,* of Madison, and oral argument by *Jack D. Walker*.

For the plaintiffs-respondents there was a brief by *Maureen L. Kinney*, of *Johns & Flaherty, S.C.,* of La Crosse, and oral argument by *Maureen L. Kinney*.

Before Gartzke, P.J., Dykman and Eich, JJ.

DYKMAN, J. Dairy Equipment Company (DEC) appeals from a judgment requiring it to pay damages to Harold Lindevig, d/b/a Lindevig Farm Supply and to David Lindevig. DEC and Harold had a grantor/dealer relationship governed by the Wisconsin Fair Dealership Law (WFDL), ch. 135, Stats. David managed Harold's dealership. DEC sent plaintiffs a termination letter which violated sec. 135.04.[1] Plaintiffs obtained a temporary injunction in this action seeking damages resulting from DEC's termination letter. Upon receipt of the injunction, DEC rescinded the termination.

The issues are: (1) whether plaintiffs may bring an action for injunctive relief and damages under the WFDL; (2) whether plaintiffs proved their damages; (3) whether plaintiffs may recover costs and reasonable attorney fees incurred in bringing their motion for an order for a temporary injunction; and (4) whether DEC is entitled to costs and attorney fees under sec. 814.025(1), Stats.[2]

---

[1] Section 135.04, Stats., requires that a grantor give its dealer at least a ninety-day written notice of termination which includes the termination reasons, and also gives the dealer sixty days to cure any deficiency. The letter did not give any reasons and gave only a sixty-day notice.

[2] Section 814.025(1), Stats., provides in part:

If an action or special proceeding commenced or continued by a

We conclude that the WFDL permits plaintiffs to bring their actions for injunctive relief and damages, but that they failed to prove damages. Therefore, they cannot recover costs or attorney fees incurred in pursuing their damage claim. However, they may recover costs and fees incurred in connection with the motion for the temporary injunction.

Plaintiffs' attorney fees are itemized by date. Of these, we conclude that they may recover $464,[3] plus their $45 filing and $20 service fees, for a total of $529. We are unable to determine what further costs plaintiffs incurred in obtaining the injunction, and we remand to the trial court this issue and that of whether plaintiffs' action for damages was frivolous under sec. 814.025, Stats. We therefore reverse and remand.

## FACTS

On October 1, 1985, DEC sent David Lindevig a letter advising him that Harold's dealership would be terminated on December 1, 1985. The letter did not comply with the WFDL or DEC's dealership contract with Harold, both of which required ninety days' termination notice. Plaintiffs' attorney told David that the letter violated the WFDL and the parties' contract. On October 10, 1985, David agreed with plaintiffs' attorney that

plaintiff or a counterclaim, defense or cross complaint commenced, used or continued by a defendant is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

[3] The trial court concluded that all of plaintiffs' attorney fees and costs were reasonable. Though DEC asserts that awarding *any* attorney fees would be unreasonable, it does not contend that plaintiffs' attorney's hourly rate or number of hours spent was unreasonable.

734

David would contact the persons at DEC responsible for the termination letter. He did not do so. On November 19, 1985, David told the attorney to commence a lawsuit. The attorney complied, and did not ask David if he had contacted the persons at DEC responsible for the termination notice.

Plaintiffs sought and received an *ex parte* order temporarily restraining DEC from terminating the dealership on November 22, 1985, but did not serve this order until December 2, 1985, the day after the termination letter was to take effect. DEC immediately rescinded the termination.

The trial court granted plaintiffs $3,930 in damages for lost profits. It also granted them $500 for incidental expenses and their total costs and attorney fees. The trial court did not rule on DEC's motion for frivolous action costs under sec. 814.025, Stats.

## STANDARD OF REVIEW

Questions of statutory interpretation are questions of law which we review de novo. *In Interest of J.V.R.,* 127 Wis. 2d 192, 199, 378 N.W.2d 266, 269 (1985). Our primary source in construing a statute is that statute's language, and, absent ambiguity, our duty is to give that language its ordinary meaning. *State v. McKenzie,* 139 Wis. 2d 171, 176, 407 N.W.2d 274, 276 (Ct. App. 1987). We will overturn a trial court's findings of fact only if clearly erroneous. Sec. 805.17(2), Stats. A claimant has the burden to prove both the fact of damages and the amount thereof. *Naden v. Johnson,* 61 Wis. 2d 375, 387, 212 N.W.2d 585, 591 (1973). Whether a party has sustained its burden of proof is a question of law which we review de novo. *Burg v. Miniature Precision Components,* 107 Wis. 2d 277, 287, 319 N.W.2d 921, 927 (Ct.

App. 1982), *rev'd in part on other grounds,* 111 Wis. 2d 1, 330 N.W.2d 192 (1983).

## CHAPTER 135 VIOLATION

Section 135.04, Stats., provides in part:

> Except as provided in this section, a grantor shall provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void.

Section 135.06, Stats., provides:

> If any grantor violates this chapter, a dealer may bring an action against such grantor in any court of competent jurisdiction for damages sustained by him as a consequence of the grantor's violation, together with the actual costs of the action, including reasonable actual attorney fees, and the dealer also may be granted injunctive relief against unlawful termination, cancellation, nonrenewal or substantial change of competitive circumstances.

It is undisputed that DEC sent plaintiffs a termination letter which violated sec. 135.04, Stats. The first issue is whether this violation entitles plaintiffs to damages which they could have avoided by notifying DEC of the letter's invalidity.

Plaintiffs had a right, upon receipt of DEC's termination notice which violated the WFDL, to pursue WFDL remedies. *Les Moise, Inc. v. Rossignol Ski Co.,*

*Inc.,* 122 Wis. 2d 51, 62, 361 N.W.2d 653, 658 (1985). In *Les Moise,* the supreme court recognized that a dealer does not necessarily suffer actual injury upon receipt of an invalid termination notice, and need not wait until it does so before it avails itself of WFDL remedies. 122 Wis. 2d at 61, 361 N.W.2d at 658. DEC argues that plaintiffs should have contacted it upon receipt of the invalid letter. However, *Les Moise* suggests that this is unnecessary. "Once Les Moise received the written notice which violated the WFDL, it could pursue remedies available under the WFDL or it could decide to allow the dealership to expire." *Id.* at 62, 361 N.W.2d at 658. There is nothing in the statute requiring a dealer who receives an invalid termination notice to notify the grantor of its invalidity. *Les Moise* leaves such decisions to the dealer's discretion. *Id.*

DEC next claims that damages for a ch. 135, Stats., violation should be available only for an unequivocal termination of a grantor/dealer relationship, citing *Meyer v. Kero-Sun, Inc.,* 570 F. Supp. 402, 407 (W.D. Wis. 1983). In *Meyer,* defendant tried to substantially change plaintiff's competitive circumstances, but did not try to terminate the grantor/dealer relationship. *Id.* Plaintiff characterized defendant's actions as amounting to a termination. The court rejected this attempt, *id.* at 405, and concluded that termination remedies were inappropriate. *Id.* at 407. However, because it was not clear whether defendant's new contract with plaintiff had eradicated the effects of defendant's alleged ch. 135 violation, the court left for trial the issue of whether defendant's actions had caused plaintiff damages. *Id.* at 408. We conclude that *Meyer* does not support DEC's argument that damages are only available when there is an

unequivocal termination.[4]

## DAMAGES

Although DEC raises other issues related to whether plaintiffs may pursue an action for damages under the WFDL, we need not address these issues because we conclude that our resolution of the damage issue disposes of them. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (where we dispose of case on one issue, we need not reach others).

DEC claims that plaintiffs' evidence was insufficient to support a damage award because plaintiffs submitted no evidence of expenses. "Where damages are susceptible of precise proof, or of estimation by those having knowledge, or are capable of proof with certainty, such proof must be adduced." *Maslow Cooperage Corp. v. Weeks Pickle Co.,* 270 Wis. 179, 191, 70 N.W.2d 577, 583 (1955).

David presented a summary of gross sales for the year preceding the contract breach and the year after the breach and testified that plaintiffs had a thirty-five percent gross markup. He alleged that plaintiffs' lost profits were the product of the gross markup and the lost sales, or $29,328. David submitted no evidence of expenses, even though he testified that he had books which showed these.

---

[4] Were we to conclude that *Meyer* holds as DEC asserts, we would probably not adopt that interpretation of the WFDL. The statute is to be liberally construed, and one of its purposes is to provide dealers with enhanced rights and remedies. Sec. 135.025(1) and (2)(c), Stats. Federal courts are to apply state court's interpretation of state law. *Burrus v. Young,* 808 F.2d 578, 581 (7th Cir. 1986).

In *Barney, Administratrix, etc. vs. Douglass,* 22 Wis. 443 (*464), 444 (*466) (1868), plaintiff alleged that defendant had damaged him by preventing plaintiff from using his shingle machine, which allegedly earned thirty to forty dollars a day. The trial court allowed the jury to consider this testimony as evidence of plaintiff's damages. *Id.* at 445 (*466). The supreme court reversed.

> We do not understand [the fact that the machine earned thirty or forty dollars a day] to mean that the value of the use of the engine would have been so great. Such a statement would be improbable on its face. We understand it to mean that thirty or forty dollars' worth of shingles could have been made in a day. But it is very obvious that this would be no proper criterion by which to determine the value of the use of the engine. The value of the labor employed, and the use of the other capital invested in the machinery, and the whole expense, would have to be considered, in determining that question. The general statement, therefore, that the engine would have earned thirty or forty dollars per day, was improper evidence, and tended to mislead the jury.

*Id.* at 445 (*466–67).

In *Plywood Oshkosh v. Van's Realty & Const.,* 80 Wis. 2d 26, 33, 257 N.W.2d 847, 850 (1977), the court held that because defendant had supplied no record of expenses, there was insufficient evidence to justify an award of damages. In that case, plaintiff sued defendant under a contract, and defendant sought a setoff for defective products. *Id.* at 28, 257 N.W.2d at 848. It was undisputed that plaintiff's faulty plywood had caused damages to defendant, which had to replace many defective cabinets it had built with plaintiff's plywood. *Id.* at 30, 257 N.W.2d at 849. Defendant alleged that total replacement expenses were "well over $1,200," that four

homes in which it had built cabinets required substantial repair, and that six to eight additional houses had also required replacement work. *Id.* at 31, 257 N.W.2d at 849. However, defendant kept no record of the expenses of the labor involved. *Id.* The court held that the evidence was too uncertain to provide the trial court with a sufficient basis to estimate damages. *Id.* at 32, 257 N.W.2d at 850.

Damages for lost profits need not be proven with absolute certainty, but the claimant must produce sufficient evidence, in this case, the books and records, on which to base a reasonable inference as to a damage amount. *Illinois Valley Asphalt, Inc. v. Harry Berry, Inc.,* 578 S.W.2d 244, 245-46 (Ky. 1979). To establish lost profits, the claimant must produce evidence of the business's revenue as well as its expenses. *Department of Transp. v. Vest,* 287 S.E.2d 85, 86 (Ga. Ct. App. 1981). Assertions as to the amount of lost profits have no evidentiary value unless supported by figures showing profits and losses. *Id.* Even if plaintiffs proved the fact of damage, evidence of their gross receipts were insufficient to prove lost profits. *Collins Music Co., Inc. v. Ingram,* 357 S.E.2d 484, 486-87 (S.C. Ct. App. 1987). Even if we accepted David's testimony that his gross markup was thirty-five percent, there is no evidence of what net profits were lost. Because plaintiffs produced no evidence of expenses, the evidence showing gross profits has no evidentiary value.

We conclude that plaintiffs failed to meet their burden of proof because they did not produce evidence of expenses. Such failure is fatal to their request for damages based on lost sales.

The next issue is whether the trial court's award of incidental damages is speculative. Plaintiffs produced

evidence that they suffered $1,715.52 in incidental damages. DEC claims the trial court rejected this evidence, yet awarded plaintiffs $500 incidental damages. The trial court addressed this issue as follows:

> 12. Plaintiffs also seek to recover $1,715.52 (Exhibits # 14 and 15; 1987) for expenses incurred in acquiring parts from other dealers during the time that defendant had plaintiffs on a restricted credit status after the termination letter. This court has found that in many instances it would have been more cost effective to secure the parts from DEC. Plaintiffs made a conscious business decision to maintain a low inventory. Plaintiffs were never precluded from buying parts from DEC or paying off certain balances owed so as to be eligible for discounts. Plaintiffs cannot benefit from a decision - out of spite or otherwise - to purchase parts elsewhere at a greater expense.
>
> 13. On the other hand, it is a reasonable conclusion that plaintiffs experienced some incidental expenses as a result of the improper termination effort - expenses over and above those that the court has awarded as lost profits. The court concludes that $500 is a reasonable sum and awards that amount to the plaintiffs for incidental expenses.

We agree with DEC that the trial court rejected plaintiffs' proof regarding incidental expenses. Because there was no reasonable basis for measuring these damages, the $500 award is invalid because it is speculative. *Pleasure Time, Inc. v. Kuss,* 78 Wis. 2d 373, 388, 254 N.W.2d 463, 470 (1977).

## ATTORNEY FEES

DEC argues that plaintiffs should not be allowed costs and attorney fees.

Section 135.06, Stats., allows successful plaintiffs their reasonable actual attorney fees in an action for damages or injunctive relief. Plaintiffs submitted a detailed breakdown of their costs and attorney fees incurred in this action. Plaintiffs were unsuccessful on their damage claims. We have construed another attorney fee statute, sec. 425.308(1), Stats., in the Wisconsin Consumer Act, chs. 421–427, Stats., as allowing attorney fees only to those customers who prevail on some but not all defenses, and only for those issues on which they were successful. *Footville State Bank v. Harvell,* 146 Wis. 2d 524, 539–40, 432 N.W.2d 122, 129–30 (Ct. App. 1988). We conclude the same reasoning should apply to our construction of this statute. Plaintiffs are not entitled to attorney fees related to their unsuccessful claims.

However, plaintiffs are eligible for their reasonable attorney fees incurred in procuring the November 22, 1985 temporary injunction.[5] These attorney fees amount

---

[5]The trial court determined that all of plaintiffs' attorney fees were reasonable. DEC argues that the trial court abused its discretion in awarding any attorney fees because of plaintiffs' conduct. Most of DEC's arguments go to the attorney fees and costs attributable to the damage claim. We have disallowed those items. DEC's sole argument going to the other fees incurred is that plaintiffs "could have eliminated virtually all fees by telephoning" DEC. We have earlier concluded that the statute did not require plaintiffs to alert DEC to its mistake. DEC raises no further argument related to the fees plaintiffs expended in seeking their injunction. We conclude that since the statute gave plaintiffs' a right to injunctive relief, it also allows plaintiffs their fees incurred in procuring it.

to $464.[6] We also conclude that plaintiffs are entitled to recover their $45 filing and their $20 service fees. Because we are unable to determine the amount of client copy cost, travel expense or mileage costs attributable to that proceeding, we remand this issue to the trial court for further findings.[7]

## FRIVOLOUS ATTORNEY FEES

DEC requests attorney fees under sec. 814.025, Stats. DEC made its motion in the trial court, but the trial court did not address DEC's claim. DEC asks that we exercise the trial court's discretion and grant its request for attorney fees. We may not do so. *Wis. Asso. of Food Dealers v. City of Madison,* 97 Wis. 2d 426, 434, 293 N.W.2d 540, 545 (1980). Because there is no trial court decision on DEC's motion for frivolous attorney fees, we remand this issue to the trial court.

*By the Court.*—Judgment reversed and cause remanded.

---

[6]As to attorney fees:

| | |
|---|---|
| 3.2 hrs. × $70/hr = | $224 |
| 4 hrs. × $60/hr = | 240 |
| | $464 |

[7] The total client copy cost listed is $27.30, the total travel expense is $14, the total mileage is $25.80, and total postage is $4.82. Because the record shows that plaintiffs' attorneys made no phone calls for this proceeding, no costs can be allowed for this item.