Vincent J. MAGESTRO and American Power Equipment, Inc., Plaintiffs-Respondents,

Bonnie MAGESTRO, Plaintiff,

v.

NORTH STAR ENVIRONMENTAL CONST., West Bend Mutual Insurance Co., Calvin Siegel, Siegel Engineering, Inc., Town of Rochester, Larry Weede, Paul Pogrant d/b/a Custom Engineered Structures and Peter Ochs, Defendants,

PEKUL INCORPORATED and Regent Insurance Company, Defendants-Appellants.

Court of Appeals

*No. 01–2723. Submitted on briefs May 9, 2002.—Decided June 19, 2002.*

2002 WI App 182

(Also reported in 649 N.W.2d 722.)

746

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Stuart B. Eiche* of *Eiche & Frakes, S.C.*, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Joseph J. Kroening* of *Stevens & Kroening, LLC* of Menomonee Falls.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Pekul Incorporated and Regent Insurance Company (Pekul) appeal from a judgment and an order of the trial court upholding a jury verdict awarding damages to Vincent J. Magestro and his wholly-owned company, American Power Equipment, Inc. (Magestro), for building repair and other monetary loss. Pekul makes the following arguments in support of its appeal: (1) consistent with the economic loss doctrine, consequential damages should not be awarded in a breach of construction contract unless the parties specifically contract for said damages; (2) Pekul did not anticipate damages for lost revenue and said damages were not foreseeable; and (3) damages for lost revenue are improper as a matter of law and the only conceivably permitted consequential damages are lost profits. We disagree with Pekul's argument regarding consequential damages under contract law, but agree that damages for lost revenue are improper as a matter of law.

## FACTS

¶ 2. Magestro contracted with Pekul to construct a "pole building" for $84,500 to house a small engine repair and retail business. Within weeks after the building's completion, the foundation cracked and the building started to sag. Magestro brought suit against Pekul[1] for breach of contract and negligence. Pekul filed a motion for partial summary judgment, asking the

---

[1] Magestro also brought suit against various other parties who were either dismissed prior to trial or found not liable by

trial court to dismiss the negligence action pursuant to the economic loss doctrine. Pekul's motion was granted and the matter proceeded to trial on the breach of contract claim.

¶ 3. After trial, the jury found that Pekul had materially breached its contract with Magestro and this breach caused Magestro damage. The jury verdict awarded Magestro $29,825 for building repair, $0 for lost profits and $43,907 for other revenue loss. Pekul filed motions after verdict to change the jury's answer and dismiss the complaint and to strike the lost revenue award as unsupported by the evidence. These motions were denied and Pekul appeals.

## DISCUSSION

¶ 4. Pekul argues that pursuant to the economic loss doctrine, consequential damages should not be awarded in a breach of construction contract unless the parties specifically contract for said damages. Pekul confuses the "economic loss doctrine" with economic loss.

¶ 5. Economic loss is damage to a product itself or monetary loss caused by a defective product that does not cause personal injury or damage to other property. *Biese v. Parker Coatings, Inc.*, 223 Wis. 2d 18, 23, 588 N.W.2d 312 (Ct. App. 1998). Put simply, economic loss is monetary loss. BLACK'S LAW DICTIONARY 530 (9th ed. 1999).

¶ 6. On the other hand, the "economic loss doctrine" is a judicially created doctrine providing that a

the jury and are not a part of this appeal. Therefore, these other parties and their role in these proceedings will not be addressed.

749

purchaser of a product cannot recover from a manufacturer damages that are solely economic in nature under tort theories of negligence or strict liability. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 400, 573 N.W.2d 842 (1998). Application of the economic loss doctrine is justified to maintain the distinct functions of tort and contract law. *Id.* at 403. The economic loss doctrine does not prohibit recovery of economic loss in contract action. In fact, the direct opposite is true; the economic loss doctrine limits recovery to only economic losses. The economic loss doctrine in no way limits a party's ability to seek breach of contract damages but merely prohibits a party from seeking a tort remedy when the damages are purely economic in nature.

¶ 7. Here, Magestro initially alleged causes of action for both negligence and breach of contract. Pekul filed a motion for partial summary judgment to dismiss the negligence claims based upon the economic loss doctrine, claiming that Magestro's losses were solely economic in nature and therefore he could not recover under tort theories of negligence. The trial court agreed and dismissed all of the negligence claims. The only claims remaining were breach of contract claims and therefore the economic loss doctrine was no longer applicable. We agree with Magestro's attorney who stated before the trial court:

> I guess I would just like to make a comment about this economic loss doctrine because I understand that you are keeping a lot of these damages out based on the economic loss doctrine, *which is a theory that is used in tort cases. The economic loss doctrine is used to preclude damages suffered by somebody in tort when there is a contract in place. I don't think that the economic loss doctrine has any applicability in this case because we're speaking now strictly of a breach of contract and whether or not there are consequential damages flowing*

*from that breach of contract . . . .* [Y]our Honor, if you are dismissing any of these damages based on the economic loss doctrine, I have to respectfully, completely disagree with you because I don't think the economic loss doctrine has any applicability in this case because we're talking about a breach of contract. (Emphasis added.)

¶ 8. Because the trial court dismissed all the negligence claims pursuant to the economic loss doctrine, the economic loss doctrine has no further applicability to the remaining breach of contract claims. Pekul's arguments that consequential damages in a breach of contract case are precluded by the "economic loss doctrine" fail.

¶ 9. Pekul next argues that consequential damages are not allowed in a breach of contract action unless the parties specifically contract for said damages. We disagree.

¶ 10. The determination of the proper measure of damages for a specific claim presents a question of law which this court reviews independently. *Schorsch v. Blader*, 209 Wis. 2d 401, 405, 563 N.W.2d 538 (Ct. App. 1997). A party may also seek consequential damages for breach of contract. *Kramer v. Bd. of Educ. of the Sch. Dist. of the Menomonie Area*, 2001 WI App 244, ¶ 11, 248 Wis. 2d 333, 635 N.W.2d 857, *review denied,* 2002 WI 2, 249 Wis. 2d 582, 638 N.W.2d 591 (Wis. Nov. 27, 2001) (No. 00–3489). Contract damages should compensate the wronged party for damages that arise naturally from the breach; said damages are limited by the concept of foreseeability. *Id.* at ¶ 10. However, in addition to these compensatory damages, a party can also seek consequential damages. *Id.* at ¶ 11.

¶ 11. WISCONSIN JI—CIVIL 3710 specifically allows for recovery of consequential damages:

> The law provides that a person who has been damaged by a breach of contract shall be fairly and reasonably compensated for his or her loss. In determining the damages, if any, you will allow an amount that will reasonably compensate the injured person for all losses that are the natural and probable results of the breach.

Pekul's arguments that consequential damages are unavailable in breach of contract actions is without merit.

■

¶ 12. Pekul also argues that damages for lost revenue were not foreseeable and were improper as a matter of law because the only conceivably permitted consequential damages were lost profits. We agree that lost profits are the only allowable consequential damages.[2]

¶ 13. We have found no authority for the contention that lost revenues are an appropriate consequential damage. The only case cited by Magestro in defense of his claim for lost revenue is *Appleton Chinese Food Service, Inc. v. Murken Insurance, Inc.*, 185 Wis. 2d 791, 519 N.W.2d 674 (Ct. App. 1994). This case does not support Magestro's assertions. *Appleton Chinese Food Service* was a negligence action for an insurance agent's

---

[2] There is no evidence in the record, either in the jury instructions or the special verdict form, that the jury was ever provided definitions of "profit" and "revenue." A transcript of the jury instruction conference does not reveal any discussion of these definitions. We can only assume that the trial court equated "revenue" with *gross* profits and "profit" with *net* profits.

negligent failure to procure requested insurance coverage, not a breach of contract case. *Id.* at 796.

¶ 14. The long-established rule in Wisconsin, stated in *Buxbaum v. G.H.P. Cigar Co.*, 188 Wis. 389, 392, 206 N.W. 59 (1925), holds that "prospective profits are a legitimate item of damages resulting from a breach of contract when the circumstances are such that the future profits may be computed with some reasonable certainty." *See also* 2 THE LAW OF DAMAGES IN WISCONSIN § 26.16 (Russell M. Ware ed., 2d ed. 1995). Prospective profits must be diminished by charges composing an essential element in the cost of manufacture or service. *Schubert v. Midwest Broad. Co.*, 1 Wis. 2d 497, 503, 85 N.W.2d 449 (1957). An injured party is only entitled to the benefit of his or her agreement, which is the *net* gain he or she would have realized from the contract but for the breach. *Thorp Sales Corp. v. Gyuro Grading Co.*, 111 Wis. 2d 431, 438–39, 331 N.W.2d 342 (1983).

¶ 15. Our holding in *Lindevig v. Dairy Equipment Co.*, 150 Wis. 2d 731, 442 N.W.2d 504 (Ct. App. 1989), clearly implies that evidence of lost revenue is improper. To establish lost profits, claimants must produce evidence of the business's revenue as well as its expenses because assertions as to the amount of lost profits have no evidentiary value unless supported by figures showing both profits and losses. *Id.* at 740. Evidence of a claimant's gross receipts is insufficient to prove lost profits. *Id.* In *Lindevig*, we specifically held that because the plaintiffs produced no evidence of expenses, the evidence showing *gross* profits (i.e., rev-

enue) has no evidentiary value. *Id.* The clear implication of *Lindevig* is that evidence of lost revenue is inappropriate.

¶ 16. Even the jury instruction addressing damages and loss of expectation suggests only an award of lost profits is appropriate:

> The measure of damages for a breach of contract is the amount which will compensate the plaintiff for the loss suffered because of the breach. A party who is injured should, as far as it is possible to do by monetary award, be placed in the position in which he or she would have been had the contract been performed. The fundamental basis for an award of damages for breach of contract is just compensation for losses necessarily flowing from the breach. A party whose contract has been breached is not entitled to be placed in a better position because of the breach than the party would have been had the contract been performed. The injured party is entitled to the benefit of his or her agreement, which is the *net* gain he or she would have realized from the contract but for the failure of the other party to perform.

WIS JI—CIVIL 3735 (emphasis added). WISCONSIN JI—CIVIL 3725 addresses damages and future profits; no mention is made of lost revenue. Revenue loss is not an appropriate consequential damages award.

¶ 17. Here, the jury instructions informed the jury of the maximum amount to award for both profit and revenue loss and the verdict form allowed it to award both. The jury awarded $0 for lost profits and $43,907 for revenue loss. We could leave the $0 lost profits award intact and simply vacate the revenue loss award. However, all discussions during trial of lost

profits and revenue loss were inextricably intertwined. A trial court has wide discretion in framing the special verdict; however, a trial court has a duty to present to the jury instructions adequate to allow it to intelligently perform its function. *Runjo v. St. Paul Fire & Marine Ins. Co.*, 197 Wis. 2d 594, 602, 541 N.W.2d 173 (Ct. App. 1995). Misleading instructions and verdict questions which may cause jury confusion are a sufficient basis for a new trial. *Id.* at 603.

¶ 18. The jury was never provided a definition of "profit" versus "revenue" and was instructed to award damages not allowed by law. Real potential for jury confusion existed in wrestling with these two closely related concepts of damages. We conclude that the combination of these erroneous instructions and special verdict form probably misled the jury, rendering the jury's verdict unreliable. A new trial on the issue of lost profits is necessary.[3]

## CONCLUSION

¶ 19. The economic loss doctrine has no applicability to this breach of contract case. We reject Pekul's claim that consequential damages are not allowed in a breach of contract case. However, we agree that damages for lost revenue are improper as a matter of law and the only conceivably permitted consequential damages are lost profits. We therefore affirm the damages award for building repair, reverse that portion of the

---

[3] Again, we note that the jury awarded $29,825 for building repair, $0 for lost profits and $43,907 for other revenue loss. The $29,825 award for building repair was not appealed and thus remains intact and unaffected by this decision. The new trial is on the issue of lost profits alone.

judgment and order concerning the consequential damages awarded (lost profits and revenue loss) and remand for a new trial on the issue of lost profits.

¶ 20. Costs are denied to all parties.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.