912 F.2d 619
 RAGEN CORPORATION, a Corporation of the State of New Jersey
v.
KEARNEY & TRECKER CORPORATION, a Subsidiary or Division of
Cross & Trecker Corporation (Two Cases).
Appeal of RAGEN CORPORATION.
Appeal of KEARNEY & TRECKER CORPORATION.
 Nos. 89-5804, 89-5832.
 United States Court of Appeals,
Third Circuit.
 Argued May 24, 1990.
Decided Aug. 15, 1990.
 
 Anthony J. Marchetta (argued) and Lawrence T. Neher, Hannoch Weisman, P.C., Roseland, N.J., for appellant/cross-appellee Ragen Corp.
 Stephen N. Dermer (argued), Lowenstein, Sandler, Kohl, Fisher & Boylan, P.C., Roseland, N.J., and Jeff C. Miller, Malcolm D. Young, Young & White, Omaha, Neb., for appellee/cross-appellant Kearney & Trecker Corp.
 Before COWEN, NYGAARD and ALDISERT, Circuit Judges.
 ORDER VACATING PRIOR OPINION
 The Court having granted rehearing before the original panel, it is ordered that the opinion and judgment entered on July 9, 1990 is vacated.
 OPINION OF THE COURT
 NYGAARD, Circuit Judge.
 
 
 1
 In this diversity case both parties appeal from a verdict of the court awarding damages for breach of warranty. During the period from 1978 to 1983 Kearney & Trecker Corporation (K & T) sold eight machines to Ragen Corporation (Ragen); agreed to retrofit four others Ragen previously purchased from K & T; and, Ragen placed orders for four new machines. When the machines failed to perform adequately, Ragen canceled the new orders and filed suit seeking to recover for breach of warranty, design defects in the machines, and fraud. K & T sought to recover damages it allegedly incurred when Ragen canceled its orders for the new machines. The district court denied K & T any recovery and compensated Ragen only for direct damages resulting from the breach of warranty.
 
 
 2
 Ragen claims the district court erred by denying it any consequential damages; by miscalculating its direct damage award for K & T's breach of warranty; by failing to rule on its fraud claim; and, by failing to rule on its claims regarding the retrofitted machines.
 
 
 3
 K & T claims the breach of warranty award to Ragen is not supported by proof of any damage; the statute of limitations bars Ragen's claims on the first three machines purchased; and, the court erred by rejecting K & T's claim for damages as a lost volume seller.
 
 I.
 
 4
 Ragen is a New Jersey Corporation which manufactures component parts for computers and nuclear reactors. K & T is a Wisconsin Corporation which manufactures high-speed machining equipment. These two companies have enjoyed a business relationship which dates back to 1955.
 
 
 5
 In 1976, K & T began manufacturing the MM800. It is a fully automated, computerized machining center designed to drill, bore and mill metal pieces and castings. In April, 1978, after two years of discussions, K & T submitted a proposal to Ragen to sell it an MM800. The proposal provided a detailed description of the MM800, the base price, a price list for available options, and the terms and conditions of the proposed sale. The following terms and conditions of the proposal are relevant:
 
 
 6
 PRICE: ... Prices quoted are F.O.B. Point of Origin, are firm for thirty days from the date hereof providing Buyer's order is received within such period and are subject to change without notice on any order received thereafter....
 
 
 7
 DELIVERY: The quoted delivery date is approximate and a more specific date will be established upon Seller's acceptance of Buyer's order ...
 
 
 8
 TERMS OF PAYMENT: Subject to Home Office approval, terms of payment are thirty (30) days net without cash discount. Special terms of payment must be specifically negotiated.
 
 
 9
 WARRANTY, DISCIAIMER, LIMITATION OF LIABILITY AND REMEDY: Seller warrants the products furnished hereunder to be free from defects in material and workmanship for the shorter of (i) twelve (12) months from the delivery date F.O.B. Point of Origin or (ii) four thousand (4,000) operating hours ...
 
 
 10
 THE WARRANTY EXPRESSED HEREIN IS IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND IS IN LIEU OF ANY AND ALL OTHER OBLIGATIONS OR LIABILITY ON SELLER'S PART. UNDER NO CIRCUMSTANCES WILL SELLER BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, OR FOR ANY OTHER LOSS, DAMAGE OR EXPENSE OF ANY KIND, INCLUDING LOSS OF PROFITS, ARISING IN CONNECTION WITH THIS CONTRACT OR WITH THE USE OR INABILITY TO USE SELLER'S PRODUCTS FURNISHED UNDER THIS CONTRACT. SELLER'S MAXIMUM LIABILITY SHALL NOT EXCEED AND BUYER'S REMEDY IS LIMITED TO EITHER (i) REPAIR OR REPLACEMENT OF THE DEFECTIVE PART OR PRODUCT, OR AT SELLER'S OPTION, (ii) RETURN OF THE PRODUCT AND REFUND OF THE PURCHASE PRICE; AND SUCH REMEDY SHALL BE THE BUYER'S ENTIRE AND EXCLUSIVE REMEDY.
 
 
 11
 ACCEPTANCE OF ORDERS: Orders are subject to acceptance by Seller only at its home office.
 
 
 12
 . . . . .
 
 
 13
 INTERPRETATION: Any contract resulting from this quotation shall be governed by and construed on accordance with the laws of the State of Wisconsin.
 
 
 14
 In response, Ragen submitted a written purchase order. The order contains the following relevant provisions:
 
 
 15
 AGREEMENT: This Order, including the terms and conditions on the face and reverse side thereof, contains the complete and final agreement between Buyer and Seller. Reference to Sellers bids or proposals, if noted on this Purchase Order, shall not affect the terms and conditions hereof, unless specifically provided to the contrary herein, and no other agreement or condition in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing, and signed by Buyer's authorized representative....
 
 
 16
 WARRANTY: Seller warrants that all of the articles and materials furnished under this order shall be free from defects in material and workmanship and will conform to applicable specifications ... supplied and that articles and materials of sellers design will also be free from defects in design. Said warranties shall remain in effect for a period of one year from receipt at Buyer's plant.... In case of breach, buyer shall have the right to request that the articles be corrected and Seller agrees to comply promptly at its own cost and expenses including transportation. Buyer may effect correction itself but at cost and expense of Seller. In view of the foregoing, Buyer may in its discretion elect to accept and retain the defective articles at a reduction in price corresponding to the decreased value.
 
 
 17
 K & T then responded by sending Ragen an acknowledgment form. In addition to the same warranty provisions as the proposal, the acknowledgment form contains the following relevant provision:
 
 
 18
 Thank you for your order which is accepted upon and only upon the terms and conditions hereof and any contrary or additional terms or conditions are hereby rejected. If you object to any of the terms and conditions hereof, it is essential that you notify us thereof specifying your objections within fifteen days after receipt of this acceptance.
 
 
 19
 These same forms were exchanged for each of the eight MM800 machines purchased by Ragen from K & T.
 
 
 20
 Ragen began experiencing problems with the first two machines soon after they were installed in January, 1979. After two more machines were installed in late 1979, the defects of the MM800s became apparent to Ragen. The MM800s malfunctioned in four main areas: (1) the axis motor; (2) the ball screws bearings; (3) the tool changers; and (4) the spindles. Pursuant to its warranty, K & T spent more than 7,000 hours repairing and servicing the MM800s at Ragen's plant over a period of nearly five years. This time and these repairs provided only temporary solutions. The recurring malfunctions caused a high rate of mechanical failure and the machines did not operate at, or near, capacity.
 
 
 21
 In January, 1981, the parties agreed to an action plan whereby K & T would make several modifications to the MM800s and would provide top-priority services and repairs, and Ragen would hire and adequately train additional maintenance personnel. Ragen initially complied, but as the additional maintenance personnel left Ragen's employ, Ragen did not replace them.
 
 
 22
 During this time, Ragen also encountered defects in Eb/1624 machining centers which had been retrofitted by K & T to operate like MM800s. Then, in November, 1980 Ragen canceled orders it had placed with K & T for two MM160s and, in March, 1982 canceled orders for two MM600 machining centers.
 
 
 23
 In August, 1981, Ragen threatened to cancel its orders for the remaining three MM800s. K & T offered to help Ragen keep the MM800s operating at 85% capacity if Ragen performed certain preventive maintenance functions. Ragen accepted the offer and did not withdraw its orders. By 1982 it became clear that K & T could not get the MM800s to operate at 85% capacity. Ragen also failed to perform its preventive maintenance function. After amicable negotiations failed, Ragen severed its business relations with K & T.
 
 
 24
 Ragen filed this lawsuit in July, 1983. Ragen asserted breach of warranty claims, design defect claims and fraud claims against K & T regarding the MM800s and the Eb/1624s. In its answer to Ragen's suit, K & T counterclaimed that Ragen breached the purchase contracts for the MM160s and MM600s. The issues were tried before the district court in May, 1987, but it issued no verdict until September, 1989. The court awarded compensation to Ragen for only the direct damages it sustained from K & T's breach of warranty on the MM800s.
 
 
 25
 The court examined the contract documents and found that K & T's proposal was an offer and Ragen's purchase order was an acceptance of that offer. Based upon these findings, the court concluded that Ragen's contractual remedy was limited to repair or replacement of the machines, and that a recovery for consequential damages was specifically excluded by the contract documents. The court also held that enforcement of the consequential damages exclusion of the contract was not unconscionable.
 
 
 26
 The district court agreed with Ragen's claim that the MM800s suffered from design defects and concluded that these defects constituted a breach of the warranty.[1] Despite Ragen's limited remedy of repair or replacement under the contract, the district court awarded direct damages to Ragen based on sections 2-719 and 2-714(2) of the Uniform Commercial Code (UCC). The court found that the exclusive remedy of repair or replacement failed in its essential purpose thereby allowing Ragen, under section 2-719, to pursue the remedies available to it under the UCC. The court concluded that the only UCC remedy Ragen could pursue was Section 2-714(2) which provides generally that a buyer who has accepted defective goods can receive the difference between the value of the goods as accepted and the value of the goods if they had been as warranted. The court found that Ragen failed to submit the difference in value between the machines as is and the machines as warranted, but nevertheless constructed its own method of calculating that amount and awarded damages to Ragen.
 
 
 27
 The district court did not address Ragen's fraud claims; and it is unclear whether it addressed Ragen's claims for the Eb/1624s because the opinion does not specifically mention them, although it does briefly discuss "retrofitted MM200s," a machine not in the case.
 
 
 28
 The court rejected K & T's statute of limitations argument, concluding that the parties' later agreements mooted that argument. It also rejected K & T's breach of contract claim, holding that K & T failed to prove it was a lost volume seller.
 
 II.
 
 29
 The primary question presented in this appeal is whether the court erred when it denied Ragen an award for consequential damages it claims as a result of the defective machines. The law of Wisconsin governs this issue,[2] and a court sitting in diversity must predict how that state's highest court would rule on this issue. Pennsylvania Glass Sand v. Caterpillar Tractor Co., 652 F.2d 1165 (3d Cir.1981). Whether the district court correctly predicted how the Wisconsin Supreme Court would rule on this issue is a question of law subject to plenary review. Compagnie des Bauxites v. Insurance Co. of North America, 724 F.2d 369, 371 (3d Cir.1983). We hold that the district court misinterpreted Wisconsin law which we conclude would permit Ragen to recover for consequential damages because the exclusive remedy failed in its essential purpose.
 
 
 30
 First of all, the parties have diverging views as to whether the court correctly found K & T's proposal to be the offer and Ragen's purchase order to be the acceptance. K & T contends that the district court is correct because the consequential damage exclusion is thus a part of the contract between it and Ragen. Ragen claims error and urges that none of the exchanges of forms created a contract, rather that the contract consists of like terms between the forms, supplemented by the UCC and, thus, consequential damages are not excluded. However, we need not decide if the district court erred because under Wisconsin law, the result of either analysis is the same: Ragen is entitled to such recovery for consequential damages.[3]
 
 
 31
 Although both parties agree that Wisconsin law applies, neither cited the leading Wisconsin law cases in their briefs. At oral argument, the court requested counsel for both sides to submit supplemental briefs discussing these three Wisconsin cases: Murray v. Holiday Rambler, Inc., 83 Wis.2d 406, 265 N.W.2d 513 (1978); Phillips Petroleum Co. v. Bucyrus-Erie Co., 131 Wis.2d 21, 388 N.W.2d 584 (1986); and Fidelity and Deposit Co. of Md. v. Krebs Engineers, 859 F.2d 501 (7th Cir.1988). In its supplemental brief Ragen contends that by the law of these cases it is entitled to recover consequential damages even if the contract excludes consequential damages because the district court found that the exclusive limited remedy of repair and replacement failed in its essential purpose.[4] K & T asserts that these cases, except for Krebs which it argues is simply wrong, verify that the district court correctly interpreted Wisconsin law and properly denied Ragen's claim for consequential damages.[5]
 
 
 32
 In Murray, a warranty for a mobile home was limited by contract to repair or replacement of defective parts. In a suit over a unit laden with defects, purchasers sought to revoke acceptance. The Wisconsin Supreme Court held that although a limitation of warranty is not unconscionable, where the limited remedy fails of its essential purpose it will be disregarded and under UCC Sec. 2-719, the buyer can proceed to any remedies available under the UCC. The court held that the buyers could revoke acceptance under UCC Sec. 2-608 and recover consequential damages under UCC Sec. 2-715. Murray v. Holiday Rambler, Inc., 265 N.W.2d 520-26.[6]
 
 
 33
 Phillips Petroleum is a breach of contract and warranty action by Phillips Petroleum Company (Phillips) against Bucyrus-Erie Company (Bucyrus) to recover for damages it suffered from several defective off-shore oil drilling rigs and adapters purchased from Bucyrus. The trial court concluded that the contract did not exclude consequential damages; alternatively, the court concluded that even if the exclusion was part of the contract, it would not be enforced because the limited remedy failed in its essential purpose.
 
 
 34
 The Court of Appeals reversed, but the Wisconsin Supreme Court affirmed the judgment of the trial court. It first concluded that the contract provided an express warranty as to precisely what quality of steel must be used in making the adapters, and that the contract also limited warranty breach damages to replacement of the defective part. Next, the court concluded that Phillips could recover consequential damages because the exclusive remedy provided relief that was unconscionably low.
 
 The court states:
 
 35
 The replacement or the supply of new conforming adapters ... only minisculely compensated the purchaser. The circumstances here require that the compensation fulfill the essential purpose of all damage awards--to make the innocent party whole ... While both parties to this action are giants in their areas of enterprise, we do not feel that the Uniform Commercial Code makes giant corporations fair game for either intentional sharp practices or a skewed rule of law. Under our justice system, the persona of the corporation is entitled to be treated fairly in commercial transactions. While we see no wilfulness or any evidence of subjective sharp practices in the performance of the contract, it is apparent that the remedy offered by Bucyrus-Erie's contract (concealed or masked in the warranty section) provides damages that are, in the circumstances, unconscionably low. The damages clause is unreasonable. While the court of appeals relied upon Murray v. Holiday Rambler, Inc., 83 Wis.2d 406, 265 N.W.2d 513 (1978), for its adherence to the letter of the damages-limitation clause, it is our conclusion that the philosophy of damage awards expressed by this court in Holiday Rambler leads to the opposite conclusion--a conclusion consistent with the underlying philosophy of the Uniform Commercial Code that there be at least a fair quantum of remedy for breach of obligations. See, official comment (1), sec. 2-719 U.C.C. Accordingly, in accordance with the code, the damages remedy is not that purportedly provided in the documents, but "remedy may be had as provided in [the code]" (sec. 402.719(2), Stats.), as applied by the trial court.
 
 
 36
 388 N.W.2d at 592.
 
 
 37
 We do not think this reasoning requires a Wisconsin court which finds that an exclusive remedy has failed in its essential purpose to also conduct an unconscionability inquiry. The holding of the Wisconsin Supreme Court was not that the exclusive remedy failed in its essential purpose; but rather that the exclusive remedy was unrealistic and unconscionably low.[7] 388 N.W.2 at 591. This analysis is consistent with UCC Sec. 2-719 and the official comments to section 2-719. Under this section, the parties "must accept the legal consequences that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract." Official Comment 1, of Sec. 2-719. Because the remedy in Phillips did not provide a "minimum adequate remedy," the court refused to enforce the consequential damages exclusion. Thus, the court did not rely on Murray because the case before it was different; the exclusive remedy in Phillips had not failed in its essential purpose; rather it failed to adequately compensate Phillips for the breach of warranty.
 
 
 38
 Finally, Krebs was a breach of contract and warranty action filed when the scrubber for a pollution-control system in an incinerator failed to scrub as warranted and all attempts to repair it failed. The trial court found that Krebs had breached its contract and the accompanying warranties, and held that, under Wisconsin law, Midwesco could recover consequential damages even though they were disclaimed in the contract. The court held that since Krebs could not cure the scrubber problem, the exclusive remedy of replacement or repair had failed of its essential purpose.
 
 
 39
 On appeal, Krebs contended that the district court erred by refusing to validate the consequential damage exclusion. Krebs made essentially the same argument K & T made before it "discovered" Murray, Phillips Petroleum and Krebs. The Court of Appeals for the Seventh Circuit held that under Murray, Phillips Petroleum and Wisconsin law, when the exclusive remedy fails in its essential purpose, the buyer can proceed to any remedy available under the UCC including consequential damages, even if excluded by contract.
 
 
 40
 Based on Murray and Phillips Petroleum, we conclude that the Wisconsin Supreme Court would hold that because Ragen's exclusive limited remedy failed in its essential purpose, it can recover consequential damages under the UCC, notwithstanding that consequential damages may be excluded under its contract with K & T. The district court found that Ragen's exclusive remedy of repair or replacement failed in its essential purpose. This finding has not been challenged on appeal. Ragen is not precluded from recovering consequential damages under the UCC if it can prove them. Thus we will reverse the district court on this issue and remand for a trial on the issue of consequential damages.
 
 III.
 
 41
 The next issue is whether Ragen's direct damage award is supported by evidence in the record. It is Ragen's burden to prove losses and that it is entitled to recover for them. DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193, 1200 (3d Cir.1978) and Lindevig v. Dairy Equip. Co., 150 Wis.2d 731, 442 N.W.2d 504 (App.1989). "Whether a party has sustained its burden of proof is a question of law which we review de novo." Lindevig, 442 N.W.2d at 505. "In cases of a breach of warranty, the established measure of damages is the difference between the actual value of the property and the value if as warranted." Mulvaney v. Tri State Truck & Auto Body, Inc., 70 Wis.2d 760, 235 N.W.2d 460 (1975).[8] "Where damages are susceptible of precise proof, or of estimation by those having knowledge, or are capable of proof with certainty, such proof must be adduced." Maslow Cooperage Corp. v. Weeks Pickle Co., 270 Wis. 179, 70 N.W.2d 577, 583 (1955), quoted in Lindevig, 442 N.W.2d at 507. "Damages ... need not be proven with absolute certainty, but the claimant must produce sufficient evidence ... on which to base a reasonable inference as to a damage amount." Lindevig, 442 N.W.2d at 508.
 
 
 42
 Ragen produced evidence of the purchase price of the machines, the average up-time of the machines and the average up-time of similar machines in the industry. The question is whether upon this evidence the court could base a reasonable inference as to actual value. We conclude that it could not. The district court found that Ragen failed to submit any proof as to the actual value of the MM800s. The court then, using the evidence that was submitted, awarded Ragen damages based on a formula it created, which measured the value of the MM800s as a direct function of the difference between the machines actual up-time and the industry up-time. Although the actual value of a machine may be a function of the amount of time a machine is operational, actual value cannot be solely dependant on this factor. Thus, the judgment on direct damages must be reversed and judgment entered in favor of K & T unless Fed.R.Civ.P. 50(b) requires that we remand.[9] We have previously held that the rule has no application where, as here, there is no jury trial. Hunter-Wilson Distilling Co. v. Foust Distilling Co., 181 F.2d 543, 546 (3d Cir.1950). Accordingly, we will reverse the district court's judgment on direct damages and direct the district court to enter judgment in favor of K & T.
 
 IV.
 
 43
 The next issue is whether the district court erred by denying K & T an award of damages it allegedly suffered when Ragen canceled its orders for new machines. We exercise plenary review of the court's selection, interpretation, and application of legal precepts. Dent v. Cunningham, 786 F.2d 173, 175 (3rd Cir.1986). We review the questions of fact for clear error. Cooper v. Tard, 855 F.2d 125, 126 (3d Cir.1988). The district court found that K & T had more orders for machines than it could fill, merely shifted the canceled orders to another customer, and thus K & T was not damaged by Ragen's breach of contract. The district court properly applied the following standards:
 
 
 44
 Section 2-708(2) provides,
 
 
 45
 (2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, ...
 
 
 46
 This section has been referred to as the "lost volume seller" provision of the UCC. Several courts, including ours, have examined when a seller is a "lost volume seller."[10] We defined "lost volume seller" in the following manner,A lost volume seller is one who upon a buyer's breach of contract, resells the article to a second purchaser at the price agreed to by the first purchaser. The second purchaser, however, would have purchased a similar article notwithstanding the first purchaser's breach. Under such circumstances, when the seller resells the article, he is still not made whole because "he will have lost one sale, one profit, over the course of the year." (citation omitted).
 
 
 47
 Storage Technology Corp. v. The Trust Co. of New Jersey, 842 F.2d 54, 56 n. 2 (3d Cir.1988) (New Jersey law).
 
 
 48
 The key inquiry is the sellers' ability to provide the product to both the breaching buyer and the resale buyer. If a seller could have sold an item to both a subsequent buyer and a breaching buyer, then the seller has suffered damage which can only be remedied by an award of lost profits. The court found that K & T could not have supplied both Ragen and a subsequent buyer and held that K & T was not entitled to damages for Ragen's breach.
 
 
 49
 K & T asserts that the testimony establishes that, at all relevant times, K & T could manufacture as many machines as it could sell. K & T points to the testimony of Michael Melzer, Vice-President and General Manager of the Module Machine Products Division of K & T. On redirect examination, in response to a question whether K & T could produce all the machines it could sell, he responded, "That is true." App. at 1901. Nevertheless, on cross-examination the following questions and answers between Mr. Melzer and the court appear:
 
 
 50
 The Court: Does this assume K & T could have manufactured any quantity of these machines that they wanted to in the course of a year or is this not a situation where you manufacture a certain number of machines and if you don't sell them to Ragen you sell them to somebody else?
 
 
 51
 Mr. Melzer: No.
 
 
 52
 The Court: In other words, are we talking specific machines or just theory here?
 
 
 53
 Mr. Melzer: These machines during that time frame, during the time these orders were received and so forth, there was a considerable backlog in the machine tool industry. One of the things that we do is we establish production schedules. Those production schedules and delivery lead times have an impact on whether there will be an order or won't be an order.
 
 
 54
 The Court: Right. Once they cancel these that enables you to speed up somebody else's delivery, right?
 
 
 55
 Mr. Melzer: Not necessarily, not necessarily. Let me correct that. It may have helped us speed the delivery of someone else's if the machine configuration was exactly the same as these. I don't know that to be the case.
 
 
 56
 The Court: Okay.
 
 
 57
 Mr. Melzer: But it may have by virtue of the fact that these machines were within our backlog and there was considerable lead time and we had sold, quote, unquote, sold the capacity requirements of our plant not only for labor hours but also for material. It may have caused us to lose an order because--
 
 
 58
 The Court: It might have started World War III, too. We have no way of knowing, right?
 
 
 59
 Mr. Melzer: The only thing I can refer back to in that time frame there was considerable lead time throughout the entire United States machine tool business for various machine tools.
 
 
 60
 The Court: "We" leads me to believe you can sell as many as you can manufacture. Your not selling these to Ragen didn't hurt you any, right? (pause)
 
 
 61
 I am sorry, Mr. Young. I didn't mean to interrupt. Go ahead with your questioning.
 
 
 62
 Based on this testimony, the district court could have found that K & T had more orders that it could fill, and that Ragen's cancellation did not harm K & T because it enabled K & T to sell machines to buyers it was otherwise unable to supply. Since there is support in the record for the district court's finding that K & T could not have supplied both Ragen and a alternate buyer, the finding is not clearly erroneous and we will affirm on this issue.
 
 V.
 
 63
 Although each party argues strenuously for the limitation period which best suits its position before the trial court, we do not reach the issue. The district court did not decide if either the Wisconsin or New Jersey statute of limitations should apply because it concluded that agreements between the parties "mooted" K & T's statute of limitations argument. The court based its conclusion on two agreements reached between the parties after the initial breach of warranty. The court found that these agreements extended K & T's warranty obligations, repair or replace defective parts, for two years. The evidence supports the court's finding and we conclude that it is not clearly erroneous. Cf. Goodman v. Mead Johnson & Co., 534 F.2d 566 (3d Cir.), cert., denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1976) (Under New Jersey law, when a party should have discovered they had an actionable claim for statute of limitation purposes is a question of fact for the court); Biocraft Laboratories, Inc. v. USM Corp., 163 N.J.Super. 570, 395 A.2d 521 (1978) (although the statute of limitations is not tolled by the making of repairs alone, there is authority that the statute would be tolled if the party in breach claims that the defect can be repaired and attempts to make the repairs). Consequently, we will affirm the district court on this issue.
 
 VI.
 
 64
 Ragen also contends that we must remand its breach of warranty claims on the Eb/1624s and its fraud claims because the district court failed to make findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure. In its opinion the district court refers to MM200s as retrofitted machines. There are no claims for MM200s. The court may be confusing the MM200 with the Eb/1624, but we cannot affirm on speculation. With respect to the fraud claims, K & T concedes, and we agree, that the district court did not decide Ragen's fraud claims. We will remand on both of these issues for findings of fact and conclusions of law. Scalea v. Scalea's Airport Service, Inc., 833 F.2d 500 (3d Cir.1987).
 
 VII.
 
 65
 In summary, we will reverse and remand to the district court for retrial on the issues of consequential damages; and, for findings of fact and conclusions of law on Ragen's claims for fraud and the allegedly defective Eb/1624 machines. We will also reverse the judgment in favor of Ragen on direct damages and direct the district court to enter judgment in favor of K & T on this issue.
 
 
 
 [1]
 The district court found that K & T's poor design caused the malfunctions of the ball screws, the tool changers and the spindles; however, the court concluded that the axis motor malfunctions were caused by Ragen's poor maintenance. Neither party challenges these findings on appeal
 
 
 [2]
 The proposal provided that Wisconsin law would apply to the parties' contract. Both parties agree that Wisconsin law governs this case
 
 
 [3]
 K & T conceded at oral argument that if Wisconsin law provides that when an exclusive contract warranty fails in its essential purpose, a party can recover for consequential damages despite an express exclusion, it would lose on this issue. Tr. of Oral Arg. at 62
 
 
 [4]
 The district court specifically found that K & T's repair and replacement warranty was the exclusive warranty given to Ragen and that the warranty failed in its essential purpose. K & T has not challenged this finding of the district court on appeal
 
 
 [5]
 Both parties err in their analysis because they failed to recognize that "stare decisis means what the court did and not what it said." Aldisert, Precedent: What It Is and What It Isn't; When Do We Kiss It and When Do We Kill It? 17 Pepperdine L.Rev. 605, 607 1990
 
 
 [6]
 The Wisconsin Supreme Court relied solely upon section 2-719 to hold that a buyer could recover consequential damages when the limited exclusive remedy fails in its essential purpose. Although Murray is factually limited to a situation with a consumer buyer and a commercial seller, the language of that section does not distinguish between consumer buyers and commercial buyers
 
 
 [7]
 Although the trial court concluded that the exclusive limited remedy failed in its essential purpose, the court of appeals concluded that this was error because Bucyrus had in fact replaced all of the defective adapters in Erie. The Wisconsin Supreme Court did not focus on this aspect of the case
 
 
 [8]
 Section 2-714(2) provides,
 The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods as accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
 
 
 [9]
 We note that the affidavit submitted by Ragen post-trial regarding the actual value of the machines shows that the damages were capable of proof by those with knowledge. Ragen's failure to submit that evidence during trial runs afoul of Maslow. The district court rejected the expert's affidavit procedurally and substantively. This ruling is not questioned on appeal
 
 
 [10]
 Although this issue is also governed by Wisconsin law, we found no Wisconsin law or cases dealing with the issue of "lost volume seller," nor have the parties cited any