Devon Orville FORD, Petitioner

v.

**BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT'S INTERIM FIELD OFFICE DIRECTOR FOR DETENTION AND REMOVAL FOR THE PHILADELPHIA DISTRICT**, Respondent

No. CIV. 1:CV–03–1571.

United States District Court, M.D. Pennsylvania.

Dec. 5, 2003.

Ian Bratlie, PIRC, York, PA, for Devon Orville Ford, Petitioner.

Daryl Ford Bloom, U.S. Attorney's Office, Harrisburg, PA, for Bureau of Immigration and Customs Enforcement, Interim Field Office Director for Detention and Removal for the Philadelphia District, Respondent.

## *MEMORANDUM*

RAMBO, District Judge.

Before the court is Petitioner Devon Orville Ford's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges the lawfulness of his final order of removal from the United States and asserts that withholding or deferral of removal is appropriate under § 241(b)(3) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1231(b)(3), or Article 3 of the Convention Against Torture ("CAT"). The parties have briefed the issues, and the matter is ripe for disposition.

## I. *Factual and Procedural Background*

Petitioner is a native and citizen of Jamaica who entered the United States illegally at an unknown location and on an unknown date. (Ex. A in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus.) Currently, Petitioner is detained at York County Prison in York, Pennsylvania. (Pet'r's Habeas Pet. and Mot. for Emergency Stay of Removal.) Petitioner describes himself as bi-sexual with a greater

homosexual inclination; however, because Jamaican society views homosexuality as aberrant behavior, Petitioner never openly professed his sexual orientation while he lived there. (Ex. D in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus at 1.) Petitioner fled to the United States following an incident in May 1991 where his neighbors, having discovered Petitioner engaging in a sexual act with his male lover, attacked him, killed his lover, and burned down his house. (*Id.* at 2.) Fearing that he could no longer reside safely in his country, Petitioner obtained a British passport and flew to the United States. (*Id.*)

Roughly five years after entering the United States, the Philadelphia Court of Common Pleas convicted Petitioner of possession with intent to deliver cocaine and sentenced him to one to two years of imprisonment. (*Id.* at 1, 3.) In 2001, the Immigration and Naturalization Service ("INS") determined that Petitioner's conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). (Ex. A in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus.) Because Petitioner was an alien convicted of an aggravated felony, the INS initiated deportation proceedings in accordance with 8 U.S.C. § 1227(a)(2)(A)(iii), which states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." (*Id.*) On June 14, 2001, the INS ordered Petitioner removed from the United States to Jamaica. (Ex. C in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus.)

Following the INS's removal order, an asylum officer reviewed Petitioner's case and concluded that Petitioner had a reasonable fear of returning to Jamaica. (Ex. D in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus at 1.) Thus, the officer referred Petitioner's case to an Immigration Judge who evaluated whether withholding of removal under 8 U.S.C. § 1231(b)(3)[1] or Article 3 of the CAT was appropriate.[2] (*Id.*) On March 27, 2002, Immigration Judge Walter Durling granted Petitioner withholding of removal under § 1231(b)(3) and, therefore, declined to address Petitioner's CAT claim. (*Id.* at 6.) In his March 27, 2002 order, Judge Durling concluded that Petitioner would likely suffer persecution upon his return to Jamaica on account of his homosexual identity. (*Id.*) Thus, Petitioner fell within the restrictions on removal laid out in § 1231(b)(3). (*Id.*) Further, Judge Durling determined that Petitioner's crime did not fall under any exception to § 1231(b)(3) as set forth in § 1231(b)(3)(B). (*Id.* at 3.) In particular, Judge Durling found that Petitioner had not committed a "particularly serious crime" under § 1231(b)(3)(B)(ii) because only a small

1. Subject to some exceptions, an alien may not be removed to a country where the alien's life or freedom would be threatened because of the alien's race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A).

2. The United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment, Article 3, provides: "No State party shall ... extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." G.A. Res. 39/46, Annex, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984). On October 21, 1998, the President signed into law legislation requiring agency heads to prescribe regulations implementing the obligations of the United States under Article 3 of the CAT. Pub.L. No. 105–277, Division G, 112 Stat. 2681 (Oct. 21, 1998); *see also* Foreign Affairs Reform and Restructuring Act of 1998 § 2242(b), 8 U.S.C. § 1231 (Supp.2003). On February 19, 1999, the INS promulgated interim regulations implementing the CAT and establishing procedures for aliens seeking to raise claims under Article 3. *See* 8 C.F.R. §§ 208.16 to .18.

amount of the controlled substance was involved in the crime and Petitioner was jailed for a relatively short time before being released. (*Id.*)

The INS appealed Judge Durling's decision to the Board of Immigration Appeals ("the Board"). (Pet'r's Resp. Br. in Supp. of Habeas at 1.) On February 20, 2003, the Board sustained the INS's appeal and held that Petitioner had in fact been convicted of a "particularly serious crime." (Ex. E in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus at 2.) Accordingly, the Board ruled that Petitioner was ineligible for removal under § 1231(b)(3) and remanded the case back to Immigration Judge Durling to determine whether Petitioner qualified for relief under Article 3 of the CAT. (*Id.*)

On remand, Judge Durling considered whether Petitioner was eligible for deferral of removal under the CAT in accordance with 8 C.F.R. § 208.17(a).[3] (Resp't's Certified Admin. R. at 58.) Applying his findings from the previous decision to the standard for deferral of removal under the CAT, Judge Durling concluded that Petitioner would more likely than not suffer torture upon his return to Jamaica and granted Petitioner deferral of removal. (*Id.* at 58–60.)

Following this decision, the Bureau of Immigration and Customs Enforcement, which replaced the INS upon the creation of the Department of Homeland Security, appealed to the Board. (Pet'r's Resp. Br. in Supp. of Habeas at 1.) In an order dated August 20, 2003, the Board held that based on its interpretation of the evidence in the record, Petitioner failed to meet his burden of proof that he required protection under the CAT. (Ex. G in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus at 2.) Therefore, the Board vacated the Immi-

gration Judge's decision granting deferral of removal and ordered Petitioner removed to Jamaica. (*Id.*)

On September 9, 2003, Petitioner filed a habeas petition and a motion for emergency stay of removal with this court. That same day, the court granted Petitioner's motion for stay of removal and directed Respondent to show cause why Petitioner should not be granted habeas corpus relief. The parties have now fully briefed the issues, and the matter is ripe for disposition.

## II. *Jurisdiction and Legal Standard*

█ Under 28 U.S.C. § 2241(c)(3), a writ of habeas corpus may extend to any person "in custody in violation of the Constitution or laws or treaties of the United States." *See also Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Recently, the Supreme Court established that despite comprehensive amendments to judicial review of immigration decisions through the Antiterrorism and Effective Death Penalty Act of 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, federal district courts have jurisdiction to decide habeas corpus petitions filed under 28 U.S.C. § 2241 by aliens subject to deportation. *INS v. St. Cyr*, 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *see also Chong v. Dist. Dir., INS*, 264 F.3d 378, 382 (3d Cir.2001). In *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 221 (3d Cir.2003), the Third Circuit extended the Supreme Court's reasoning in *St. Cyr* to habeas petitions alleging violations of the CAT. Accordingly, this court has jurisdiction to hear Petitioner's claims.

█ A district court's review of administrative immigration decisions under

---

**3.** Under 8 C.F.R. § 208.17(a), an alien who has been ordered removed and falls within the mandatory denial of withholding of re-

moval provisions in 8 U.S.C. § 1231(b)(3)(B) may be granted deferral of removal if he or she meets the CAT standard.

§ 2241 is limited. First, a district court reviews only the opinion of the Board and does not review both the Board's and the Immigration Judge's opinions. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir.2001). Second, the standard of review is restricted to purely legal questions. *Sol v. INS*, 274 F.3d 648, 651 (2d Cir.2001); *Bowrin v. INS*, 194 F.3d 483, 490 (4th Cir.1999); *Chinchilla–Jimenez v. INS*, 226 F.Supp.2d 680, 683 (E.D.Pa.2002). Specifically, a district court may review statutory and constitutional claims as well as claims asserting the erroneous application of legal principles to undisputed facts. *Ogbudimkpa*, 342 F.3d at 222. However, "federal jurisdiction over § 2241 petitions does not extend to review of discretionary determinations" made by the Board. *Sol*, 274 F.3d at 651.

### III. *Discussion*

Petitioner contends that his habeas petition should be granted for the following reasons. First, the Board violated his due process rights by failing to make an individualized determination that Petitioner committed a "particularly serious crime." Second, the Board used the incorrect standard to review the Immigration Judge's grant of relief under the CAT. For the reasons set forth more fully below, the court will grant Petitioner's habeas petition as to Petitioner's first argument and deny the petition as to Petitioner's second argument.

### A. *The Board failed to make an individualized determination of whether Petitioner rebutted the presumption that he committed a "particularly serious crime."*

■ In removal proceedings, aliens are entitled to due process. *Abdulai*, 239 F.3d at 549. In this context, due process requires that an alien be heard at a meaningful time and in a meaningful manner. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319,

333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Under this due process standard, an alien (1) is entitled to factfinding based on a record produced before the Board and disclosed to the alien, (2) is allowed to make arguments on his or her own behalf, and (3) has the right to an individualized determination of his or her interests. *Chong*, 264 F.3d at 386; *Abdulai*, 239 F.3d at 549.

■ Petitioner attacks the Board's decision under the third prong above. Specifically, Petitioner argues that the Board did not undergo an individualized inquiry in discerning whether he committed a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii). Section 1231(b)(3)(B)(ii) does not define the term "particularly serious crime." *Matter of Y–L, A–G, & R–S–R*, 23 I & N Dec. 270, 273 (BIA 2002). However, the text of § 1231(b)(3) provides in relevant part:

> For the purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

In other words, Congress created a per se rule that aliens convicted of aggravated felonies and sentenced to five years of imprisonment or more automatically fell within the definition of "particularly serious crime." *Matter Y–L*, 23 I & N Dec. at 273. With respect to aggravated felonies involving a prison sentence of less than five years, Congress granted the Attorney General discretion to determine which of those felonies qualified as "particularly serious crimes." *Id.*

Traditionally, the Board utilized a case-by-case approach in analyzing aggravated

felonies with a prison sentence of less than five years, but in *Matter of Y–L*, the Attorney General, pursuant to its authority under § 1231(b)(3), announced a new standard. *Id.* at 273–74, 2002 WL 358818. The Attorney General held that "aggravated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes.'" *Id.* at 274, 2002 WL 358818. The Attorney General further explained that "[o]nly under the most extenuating circumstances that are both extraordinary and compelling would departure from this interpretation be warranted or permissible." *Id.* For instance, the Attorney General conceded that in "very rare case[s]," an alien may rebut the presumption by demonstrating that his or her particular drug trafficking crime involved, at a minimum:

> (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

*Id.* at 276–77, 2002 WL 358818. If the alien establishes all six elements, then the Immigration Judge must consider other circumstances such as whether "the prospective distribution was solely for social purposes, rather than for profit" to determine if departure from the presumption is warranted. *Id.* at 277, 2002 WL 358818. The Attorney General, however, explicitly stated that circumstances such as "cooperation with law enforcement authorities, limited criminal histories, downward departures at sentencing, and post-arrest (let

alone post-conviction) claims of contrition or innocence" did not justify deviation from the presumption. *Id.*

Petitioner contends that the standard set forth in *Matter of Y–L* conflicts with Third Circuit precedent in *Chong v. Dist. Dir., INS*, 264 F.3d 378 (3d Cir.2001). In *Chong*, the petitioner, a Malaysian citizen who had become a permanent resident of the United States, was convicted of a drug crime and sentenced to two years of imprisonment. *Id.* at 381. The Immigration Judge rejected the petitioner's request for withholding of removal under § 1231(b)(3) on the ground that the petitioner's underlying drug conviction was per se a "particularly serious crime." *Id.* The Immigration Judge also denied the petitioner an individualized hearing on the issue. *Id.* The Board affirmed the Immigration Judge's decision, but modified it to the extent that it examined the record to provide justification for finding the petitioner's aggravated felony to be a "particularly serious crime" even though she was sentenced to less than five years imprisonment. *Id.*

On appeal to the Third Circuit following the district court's denial of petitioner's habeas petition, the court held that although due process did not require the Immigration Judge to hold an individualized hearing, the petitioner was entitled to an individualized examination of the record. *Id.* at 386–87. Specifically, the Third Circuit clarified that the Board must analyze the specific facts of the case "rather than blindly following a categorical rule, i.e., that all drug convictions qualify as 'particularly serious crimes.'" *Id.* at 387. Nevertheless, because the Board's opinion indicated that it had undergone an individualized determination of the petitioner's case, the Third Circuit affirmed the district court's decision. *Id.* at 391.

In the case at hand, Petitioner argues that given the holding in *Chong*, Immigra-

tion Judge Durling correctly ruled that Petitioner's crimes were not "particularly serious crimes." Judge Durling interpreted the Attorney General's opinion in *Matter of Y–L* as essentially a per se rule that all drug trafficking convictions are "particularly serious crimes." Regardless, he held that the Third Circuit's decision in *Chong* mooted the Attorney General's opinion. (Ex. D in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus at 3.) Having reached this conclusion, Judge Durling conducted an individualized examination of Petitioner's case and determined that sufficient evidence existed to establish that Petitioner's conviction was not a "particularly serious crime." (*Id.*)

In response to Petitioner's argument, Respondent contends that the Board's opinion accurately reflects the effect that *Chong* has on *Matter of Y–L*. The Board concluded that the Attorney General's opinion in *Matter of Y–L* did not conflict with *Chong*. (Ex. E in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus at 2.) Accordingly, the Board determined that *Matter of Y–L* was applicable to Petitioner's case. (*Id.*) In applying the *Matter of Y–L* standard to the facts in Petitioner's record, the Board found that Petitioner's drug trafficking conviction was presumptively a "particularly serious crime" and that the circumstances of the conviction did not indicate that Petitioner fell within the narrow exception outlined in the Attorney General's decision. (*Id.*)

■ The court agrees with Respondent's argument that the Board correctly interpreted the relationship between *Matter of Y–L* and *Chong*. The two opinions

can be read consistently with one another. As an initial matter, the Board is obligated to adhere to precedent of the federal circuit court of appeals for cases originating within that circuit. *Abdulai v. Ashcroft*, 239 F.3d 542, 553 (3d Cir.2001); *Ladha v. INS*, 215 F.3d 889, 896 (9th Cir.2000); *Matter of Yanez–Garcia*, 23 I & N Dec. 390, 396, 2002 WL 993589 (BIA 2002) (stating that the Board has an "overriding obligation to follow the authoritative decisions of the federal circuit courts of appeals"). Therefore, the Board was required to follow the Third Circuit's decision in *Chong* and undergo an individualized examination of Petitioner's case. However, *Chong* does not conflict with the standard set forth in *Matter of Y–L*. The Attorney General in *Matter of Y–L* stopped short of creating a per se rule that all drug trafficking convictions constitute "particularly serious crimes." *See Reyes–Sanchez v. Ashcroft*, 261 F.Supp.2d 276, 286 n. 7 (S.D.N.Y.2003) (noting that the rule in *Matter of Y–L* is not a per se rule, but rather a rebuttable presumption). Indeed, the express language of the opinion states that "aggravated felonies involving unlawful trafficking in controlled substances *presumptively* constitute 'particularly serious crimes' within the meaning of section [1231(b)(3)(B)(ii) ]." *Matter of Y–L*, 23 I & N Dec. at 274 (emphasis added). Further, the Attorney General explained that it is not necessary "to exclude entirely the possibility of the very rare case where an alien may be able to demonstrate extraordinary and compelling circumstances that justify treating a particular drug trafficking crime as falling short of [the presumption]."[4] *Id.* at 276, 2002 WL 358818. Because the *Matter of Y–L* standard is a rebuttable presumption

---

4. Petitioner contends that despite the plain language of *Matter of Y–L*, the standard set out by Attorney General is effectively a per se rule because the exception is so narrow. Although the exception is extremely restrictive, the court must give substantial deference to

the Attorney General in its interpretation of statutory law in the immigration context. *INS v. Aguirre–Aguirre*, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (holding that "principles of *Chevron* deference are ap-

and not a per se rule, the Attorney General left room for Immigration Judges and the Board to conduct an individualized determination of the record in each case. Rather than applying a categorical rule, immigration courts in the Third Circuit must look at the specific facts in the record to determine if the presumption is rebutted. Thus, the Board correctly concluded that it is possible to comply with both the Third Circuit's mandate to conduct an individualized review of the record and the Attorney General's decision to employ a rebuttable presumption.[5]

In the alternative to its unsuccessful argument above, Petitioner asserts that even if *Matter of Y–L* and *Chong* are consistent with one another, the Board failed to undergo an individualized determination of whether the presumption was rebutted in this case. In other words, Petitioner asserts that the Board did not adequately consider whether Petitioner was eligible for the exceptions carved out by the Attorney General. The court agrees.

■ In order to satisfy due process, a "decisionmaker must 'actually consider the evidence and argument that a party presents.'" *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir.2001) (quoting *Llana–Castellon v. INS*, 16 F.3d 1093, 1096 (10th Cir.1994)). Petitioner bears the burden of proving that "'the [Board] did not review the record when it considered the appeal.'" *Abdulai*, 239 F.3d at 550 (quoting *McLeod v. INS*, 802 F.2d 89, 95 n. 8 (3d Cir.1986)).

Because agency action is given a presumption of regularity, Petitioner's burden is difficult to overcome. *Id.*

■ For purposes of due process, the issue is not whether the Board attained the correct decision, but whether the Board merely made an individualized examination of the record. *Abdulai*, 239 F.3d at 550. In the Third Circuit, the Board must simply provide "sufficient indicia" in its opinion that it considered the alien's interests. *Id.* (finding no violation of due process where the Board's opinion "evidences its consideration of the individualized circumstances of [the petitioner's] application"); *see also Chong*, 264 F.3d at 387. In contrast, due process is offended when the Board acts as a rubber-stamp or provides no indication that it conducted a particularized consideration of the petitioner's case. *Abdulai*, 239 F.3d at 549–50.

In the instant matter, the Board failed to offer any explanation concerning why Petitioner did not meet the requirements of the exception. The Board's opinion only stated: "[W]e do not find that the circumstances of the respondent's conviction warrant a conclusion that he falls within the narrow exception outlined in *Matter of Y–L–, A–G–, R–S–R– ....*" (Ex. E in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus at 2.) The Board did not specify which facts precluded Petitioner from the exception. Nor did the Board weigh any of the factors the Attorney General listed for consideration in *Matter of Y–L*.[6] With-

---

plicable" in the immigration context); *Abdulai v. Ashcroft*, 239 F.3d 542, 551 (3d Cir. 2001) (same); *see also* 8 U.S.C. § 1103(a)(1) ("[D]etermination and ruling by the Attorney General with respect to all questions of law [regarding immigration and nationality] shall be controlling.").

5. In *Matter of Y–L*, the Attorney General seemed to anticipate such a result. In a footnote, the Attorney General cited to *Chong* and noted that "courts have indicated that the

application of 'per se' determinations is legally questionable." *Matter of Y–L*, 23 I & N Dec. at 276. Thus, the Attorney General indicated that a per se rule would violate an alien's due process right to an individualized determination.

6. In *Matter of Y–L*, the Attorney General did not intend to precisely define the boundaries of what circumstances might qualify an alien to fall within the narrow exception. *Matter of Y–L*, 23 I & N Dec. at 276. Nevertheless, the

out any discussion on the issue, the Board's opinion is, in effect, a rubber-stamp. Although the requirements of due process set forth in *Chong* and *Abdulai* are minimal, the Third Circuit demands more than a conclusory statement that Petitioner did not meet the narrow exception of *Matter of Y–L.*

For these reasons, the court finds Petitioner's argument regarding the Board's failure to conduct an individualized examination of whether Petitioner met the exception laid out in *Matter of Y–L* to be well-founded. Therefore, Petitioner's habeas petition is granted with respect to this issue, and the court will remand the case back to the Board for further consideration on whether the *Matter of Y–L* exception is applicable to this case. If the Board determines that Petitioner did not commit a "particularly serious crime," the Board must examine whether the Immigration Judge correctly concluded that

Attorney General set forth a comprehensive list of factors that clearly serve as a guide for lower immigration courts to follow. Granted, immigration courts reviewing cases originating in the Third Circuit may meet the requirements of due process without weighing the factors at all as long as they provide some indica of an individualized determination. Still, the Attorney General laid out the factors to assist immigration courts in ascertaining when the exception is warranted. For example, the instant matter is a case where working the factors might be particularly appropriate. Petitioner was convicted of a small amount of cocaine. (Resp't's Certified Admin. R. at 244.) In fact, Petitioner testified that he had no involvement in the criminal activity. (*Id.* at 244–46.) He claims that he was merely in the wrong place at the wrong time and that he has never even used drugs. (*Id.* at 246.) The record does not indicate that violence was associated with the offense, that organized crime or terrorism was involved, or that any juveniles were adversely effected. Additionally, Petitioner testified that he never sold drugs for profit. (*Id.*) Therefore, the possibility exists that this case is one of the "unusual circumstances" where depar-

withholding of removal was appropriate under 8 U.S.C. § 1231(b)(3).

**B. *The Board applied the correct standard of review to the Immigration Judge's grant of relief under the CAT.***

■ Petitioner also argues that the Board used the wrong standard of review when it vacated Judge Durling's decision granting deferral of removal under the CAT. In order to obtain relief under the CAT, an alien has the burden of proof "to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Torture is defined as an act that causes severe pain or suffering, whether physical or mental. 8 C.F.R. § 208.18(a)(1). The act of torture must be "intentionally inflicted" for an illicit purpose such as obtaining information or a confession, punishing or intimidating the person, or discriminating against the person for any reason.[7] *Id.* Finally, the

ture from the presumption might be justified. Of course, these sort of factual determinations are not within the scope of review of this court. *Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001); *see also Reyes–Sanchez v. Ashcroft,* 261 F.Supp.2d 276, 288 (S.D.N.Y.2003). Accordingly, the court leaves the ultimate conclusion of whether the exception applies in this case to the Board's discretion on remand.

7. Petitioner takes issue with the Board's characterization of 8 C.F.R. § 208.18(a)(1) as requiring "that the act be specifically intended to inflict severe pain or suffering." (Ex. G in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus at 1.) Petitioner contends that the Board used the wrong standard of review because the Third Circuit recently held that the "intentionally inflicted" requirement in 8 C.F.R. § 208.18(a)(1) is not the same as a specific intent requirement. *Zubeda v. Ashcroft,* 333 F.3d 463, 473 (3d Cir.2003). In *Zubeda,* the Third Circuit explained that "[t]he intent requirement ... distinguishes between suffering that is the accidental result of an intended act, and suffering that is purposefully inflicted or the foreseeable consequence of deliberate conduct." *Id.* The court

pain or suffering must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.*

In applying these regulations to the facts of Petitioner's case, Immigration Judge Durling found that Petitioner met his burden that he would more likely than not suffer torture upon return to Jamaica. (Resp't's Certified Admin. R. at 59–60.) Judge Durling based his decision on Amnesty International reports that chronicled the "extreme prejudice" directed against gays and lesbians in Jamaica. (*Id.* at 58; Ex. D in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus at 5.) These reports led Judge Durling to the conclusion that the Jamaican government has essentially criminalized homosexual conduct and has freely permitted violence against the gay and lesbian community. (Resp't's Certified Admin. R. at 59.) Finally, Judge Durling found that Petitioner could not safely relocate anywhere in Jamaica because he was a known homosexual and his participation in political activities there caused him to be recognized all over the country. (*Id.* at 3–4; Ex. D in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus at 5–6.)

On appeal, the Board held that the evidence in the record did not support a finding that Petitioner met his burden of proof for relief under the CAT. (Ex. G in Supp. of Gov't's Resp. to Pet. for Writ of Habeas Corpus at 2.) The Board reasoned that although some homosexuals have experienced acts of torture in Jamaica involving government acquiescence, the evidence did not demonstrate that a substantial number of gays and lesbians suffer this fate. (*Id.*) Further, the Board concluded that Petitioner failed to estab-

lish that he would be specifically targeted for torture after 12 years of living outside the country and deemed Petitioner's fears "speculative assumptions" based on a "'worst case' scenario." (*Id.*)

Petitioner argues that the Board failed to adopt the factual findings of the Immigration Judge because the findings of the Immigration Judge could not have led to the Board's decision. Petitioner asserts that "the Board simply retried petitioner's case, decided they would not have granted relief if they had heard it in the first instance, and reversed." (Pet'r's Resp. Br. in Supp. of Habeas at 13.) Thus, Petitioner contends that the Board applied the incorrect standard of review because in order for the Board to reach the result it did, it should have found that Judge Durling was clearly erroneous in his factual findings.

■ Under 8 C.F.R. § 1003.1(d)(3)(i), the Board may not engage in de novo review of findings of fact made by an Immigration Judge. Rather, findings of fact, including credibility of testimony, are only subject to a clearly erroneous standard. *Id.* On the other hand, questions of law, discretion, and judgment are given de novo review. *Id.* § 1003.1(d)(3)(ii). Therefore, the Board is restricted in its authority to engage in fact-finding. *Matter of S–H*, 23 I & N Dec. 462, 464 (BIA 2002). However, the issue of whether a party has sustained its burden of proof is a question of law, which is afforded de novo review. *Ragen Corp. v. Kearney & Trecker Corp.*, 912 F.2d 619, 625–26 (3d Cir. 1990).

Based on these legal principles, the Board did not apply the wrong standard of review. The Board accepted the findings

---

concludes that the distinction in *Zubeda* does not significantly alter the standard of review the Board applied in the instant matter. Indeed, other than noting this modification in

the law, Petitioner offers no example of how the Board's decision could have been different.

of fact made by the Immigration Judge, but viewed those undisputed facts as failing to meet the "more likely than not" burden required by the CAT. The Board was within its discretion to do so under 8 C.F.R. § 1003.1(d)(3)(ii). The Board did not reject the Immigration Judge's credibility determinations or contest the facts that were found. Rather, the Board interpreted the established set of facts in such a way as to reach a different conclusion than the Immigration Judge. In making a discretionary determination, the Board was permitted to make a de novo determination. *See id.* Therefore, the Board did not use the incorrect standard of review.

Notwithstanding the fact that the Board applied the correct standard of review, Petitioner argues that given Judge Durling's factual findings, the Board could not have reached the conclusion it did. In so arguing, Petitioner apparently requests the court to find that the Board applied the wrong standard for relief under the CAT. In essence, Petitioner claims that the Board misapplied the "more likely than not" standard under 8 C.F.R. § 208.16(c)(2) to the factual findings.

A district court has jurisdiction in habeas petition cases to review the Board's application of legal principles to undisputed facts. *Ogbudimkpa v. Ashcroft,* 342 F.3d 207, 222 (3d Cir.2003). Therefore, if the Board erroneously applied the CAT standard to Petitioner's case, habeas relief would be warranted. *Id.* However, while it is clear that the court has the authority to review the Board's application of law to the facts, the precise standard for this task is uncertain. *See, e.g., Wang v. Ashcroft,* 320 F.3d 130, 143 (2d Cir.2003) (declining to define the precise standard of review for the Board's application of law to factual findings pursuant to a § 2241 petition). Nevertheless, several circuit court opinions have offered some guidance on the issue. For instance, in *Wang,* the Second Circuit

noted that "the standard of review of [the Board's] decision in a habeas case is generally more limited than on direct review ...." *Id.* (citing *Heikkila v. Barber,* 345 U.S. 229, 236, 73 S.Ct. 603, 97 L.Ed. 972 (1953)). The Second Circuit has also acknowledged that federal courts do not have the authority to reweigh the evidence that was before the Board. *Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001) (reasoning that fact-intensive review is contrary to what the habeas statute provides, which is review of statutory or constitutional errors). Finally, the Third Circuit has held that the Board does not need to address each piece of evidence presented to it. *Sevoian v. Ashcroft,* 290 F.3d 166, 178 (3d Cir.2002). Rather, the Board must only demonstrate that "it has reviewed the record and grasped the movant's claims." *Id.* Based on these guiding principles, the court concludes that the appropriate standard to apply to the review of the Board's application of law to the Immigration Judge's factual findings is that there must be at least some evidence to justify the Board's determination. *See United States ex rel. Zhelyatdinov v. Ashcroft,* No. CIV.A. 02–4318, 2002 WL 31957526, at \*8 (E.D.Pa. Dec.27, 2002) (determining that in reviewing whether the Board applied the correct legal standard to the factual findings, "the record must contain, as a matter of due process, at least some evidence to support the decisions of the Immigration Judge and/or the [Board]").

██ Having reviewed the record before the Board, the court finds that evidence exists to support the Board's ruling. First, Petitioner relies on an incident where his neighbors discovered him engaged in a homosexual act with his male lover as proof that he will be targeted as a known homosexual upon his return to Jamaica. However, as the Board pointed out in its opinion, this event occurred over 12

years ago. The fact that the incident occurred so long ago supports the Board's conclusion that Petitioner failed to demonstrate the probability that he would be tortured. Second, Petitioner offered numerous reports from organizations such as Amnesty International that recounted the horrific treatment of gays and lesbians in Jamaica. The Board acknowledged that the reports were clear evidence that some homosexuals experienced acts of torture in Jamaica, but found that the reports did not establish that a substantial portion of homosexuals in the country fall prey to this fate. Based on the foregoing, the court concludes that the Board relied on sufficient evidence to support its decision that Petitioner failed to meet his burden of proof for relief under the CAT. *Cf. Zhelyatdinov* at *8 (granting a writ of habeas because there was no specific evidence to support the Immigration Judge's or the Board's decisions).

For these reasons, the court rejects Petitioner's arguments regarding the Board's review of his CAT claim. Accordingly, Petitioner's habeas petition is denied with respect to this issue.

## IV. *Conclusion*

In accordance with the foregoing discussion, the court will grant Petitioner's habeas petition in part and deny it in part. The court will grant the petition as to Petitioner's argument that the Board failed to conduct an individualized examination of whether he met the exception laid out in *Matter of Y–L* and remand the case to the Board for consideration of this issue. If the Board concludes that Petitioner falls within the exception on remand, then it must analyze whether the Immigration Judge correctly found that withholding of removal was appropriate under 8 U.S.C. § 1231(b)(3). As to Petitioner's second argument regarding the CAT, the court will deny the petition for habeas corpus. An appropriate order will issue.